**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0795n.06
Filed: October 25, 2006

**NO. 05-4101**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | ON APPEAL from the United States |
| v. | ) | District Court for the Southern |
| | ) | District of Ohio. |
| JEFFREY D. MUNNERLYN, | ) | |
| | ) | OPINION |
| *Defendant-Appellant*. | ) | |
| | ) | |
| | ) | |

Before: ROGERS and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.[*]

HOOD, Chief District Judge.  Jeffrey D. Munnerlyn ("Defendant" or "Munnerlyn") was

convicted in the United States District Court for the Southern District of Ohio of three armed

bank robberies and of using and carrying a firearm during and in relation to those three robberies.

Defendant challenges the district court's denial of his motion for acquittal on Counts 1, 2, 3, 4,

and 6 and claims that the district court erred by admitting recordings of his phone conversations.

For the reasons that follow, we **AFFIRM** the judgment of the district court.

On October 21, 2004, a grand jury for the Southern District of Ohio returned a six-count

indictment against Munnerlyn.  In Counts 1, 3, and 5 of his indictment, Munnerlyn was charged

with armed robbery of the Heartland Bank in Grove City, Ohio on April 1, 2004, June 11, 2004,

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District
of Kentucky, sitting by designation.

and September 8, 2004, in violation of 18 U.S.C. § 2113(a) and (d). Counts 2, 4, and 6 charge

Munnerlyn with using and carrying a firearm during and relation to those three bank robberies, in

violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii). Following a jury trial at which Munnerlyn

represented himself, he was found guilty on all six counts and subsequently sentenced to 798

months. Munnerlyn filed a timely notice of appeal.

## I.

Munnerlyn argues that the district court erred by denying his motion for acquittal as to

Counts 1, 2, 3, 4 and 6 because the evidence presented by the government was insufficient to

support the conviction. "The standard for evaluating claims that a conviction is not supported by

sufficient evidence presents a very difficult hurdle for the criminal appellant . . . ." *United States

v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir. 1998). "'[T]he relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*)). This Court examines the

evidence in the light most favorable to the government and draws all inferences in the

government's favor. *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998).

The first four counts refer to the April 1, 2004, and June 11, 2004, robberies. Munnerlyn

contends that the government's evidence was insufficient because the bank employees who

testified against him were so unreliable that no rational trier of fact could have believed what

they said. He argues that, in general, eyewitness identification testimony is unreliable. He also

points out that the testimony was not corroborated by physical evidence. Munnerlyn notes that

2

after the June 11, 2004, robbery, when bank employees Vicki Jahn and Kristy Searles were shown photo spreads that did not include Munnerlyn, they picked out a then current suspect, Leonard Wilson, as the man who robbed their bank. Munnerlyn characterizes the identifications made by the bank employees as questionable because the robber had covered the bottom of his face and wore a hat.

At trial, the government presented the testimony of several bank employees who identified Munnerlyn as the man who robbed their bank on April 1, 2004, and June 11, 2004. Bank employee Patricia Greisenauer stated that Munnerlyn entered the bank with a firearm, threatened employees and customers, fired the firearm, and forced employees to give him money. When bank employee Peggy Sammons testified about the April and June robberies, she identified Munnerlyn as the man who was two to three feet in front of her when he pointed a gun at her and forced her to place money in his bag. Bank employee Kristy Searles testified that during the April and June robberies she was in the front of the bank and observed Munnerlyn rob the bank. She said that she saw the robber walk into the bank, pull up a mask, and then pull out his gun. Looking at a photograph from the April 1, 2004, robbery, Searles identified Munnerlyn as the robber in the photograph. Searles stated that during the June robbery, Munnerlyn's mask slid down and she saw part of his face. Bank employee John Barnes, who was present for all three robberies but admitted that he never got a good look at the robber, testified that he believed that the same man robbed the bank on all three occasions based on the robber's voice, the language used during the first two robberies, and the way the robberies were carried out.

Munnerlyn's arguments challenge the credibility of the witnesses, not, as he claims, the

3

sufficiency of the evidence. "[D]etermining the credibility of witnesses is a task for the jury, not this court." *United States v. Kelly*, 204 F.3d 652, 656 (6th Cir. 2000) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)); *see United States v. Adamo*, 742 F.2d 927, 934-35 (6th Cir. 1984) ("There is no place, however, for arguments regarding a government witness' lack of credibility in a Rule 29 motion for acquittal before a federal trial judge. A trial judge considering a Rule 29 motion may neither weigh conflicting evidence nor consider the credibility of witnesses."). The jury was obviously entitled to accept the testimony of the bank employees despite Munnerlyn's efforts on cross-examination to discredit their testimony by questioning them about erroneously identifying another suspect as the robber and their ability to accurately identify the disguised robber. Munnerlyn has not shown that the government failed to prove beyond a reasonable doubt that he committed the elements of the crimes for which he was charged, that is, that he took, by force and violence and by intimidation, money from the Heartland Bank on April 1, 2004, and June 11, 2004, and in doing so, put in jeopardy the life of any person by the use of a dangerous weapon or device, 18 U.S.C. § 2113(a), (d), and that he knowingly used or carried a firearm during and relation to those robberies. 18 U.S.C. § 924(c)(1)(A)(ii), (iii). The evidence of Munnerlyn's guilt was sufficient to support a conviction; therefore, the district court did not err in denying his motion for acquittal with respect to Counts 1, 2, 3, and 4.

As to Count 6, Munnerlyn argues that the evidence presented to convict him of knowingly using or carrying a firearm during and relation to the September 8, 2004, robbery was insufficient because the government never presented any evidence that the firearm used in the

robbery was real. However, the bank employees testified that the September 8, 2004, robbery was slightly different than the two previous robberies. Unlike the April and June robberies, during the September robbery, the robber did not shoot the gun he was carrying and was not as loud or as profane. Instead, according to the bank employees who testified, the robber entered the bank with a gun and announced, "you know the routine."

Although the government did not present the gun used in the robbery, it submitted bank surveillance pictures from the September robbery in which the robber was holding what appears to be a gun while forcing bank employees to place money in a bag. The government also presented the testimony of bank employees who claimed that the same man robbed the bank on all three occasions. A bank customer who witnessed the September robbery testified that the robber had a gun. Munnerlyn's argument that the government never proved that he used a gun in the September robbery fails, and the evidence and eyewitness testimony offered by the government to convict Munnerlyn was sufficient to support a jury verdict finding that he used or carried a firearm in violation of § 924(c). Therefore, the district court did not err in denying his Rule 29 motion with respect to the charge in Count 6.

## II.

Munnerlyn claims that it was unfairly prejudicial for the district court to allow the government to play a tape recording of his September 11, 2004, phone call from jail. The government presented a taped telephone conversation in which Munnerlyn makes a three-way telephone call from jail and asks the other person if anyone came and got "that." When the other person says he disposed of "it," Munnerlyn asks if he hid "it" good and tells him that he wished

he had burned "it." Munnerlyn objected to the evidence, anticipating that the government would ask the jury to draw an inference that he was asking the other person to destroy evidence related to a bank robbery. According to Munnerlyn, the government should have been required to demonstrate that "it" was related to the September 8, 2004, bank robbery. After emphasizing that the jury was free to decide whether an inference should be made based on the conversation, the district court overruled Munnerlyn's objection to the introduction of the tape recording and found that the tape recording was probative and went to one of the main issues in the case.[1]

Evidentiary rulings that are properly preserved are reviewed by this Court under an abuse of discretion standard. *United States v. Mack*, 258 F.3d 548, 553 n.1 (6th Cir. 2001). An abuse of discretion is found if the ruling is "manifestly erroneous." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997). When reviewing a district court's Federal Rule of Evidence 403 determination, this Court "takes a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter [substantially] outweighs the former." *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997) (citing *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)).

Munnerlyn relies on *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214 (1st Cir. 1982) to support his argument. The *Nation-Wide* case, however, is inapposite to that of the case *sub judice*. In *Nation-Wide*, the trial court held that one defendant's act of

---

[1] Although the district court did not explicitly state that it was balancing the probative value of the tape recording against its prejudicial effect, it is clear from the trial transcript that the court acknowledged Munnerlyn's argument that the tapes were unfairly prejudicial and nonetheless overruled his motion.

destroying certain banking records supported an inference that the records would have allowed

the plaintiff to trace its funds into the hands of the defendants. *Id.* at 217. The *Nation-Wide*

defendant was on notice of the plaintiff's possible claim to the funds before he destroyed the

records. *Id.* at 219. In Munnerlyn's case, the trial court allowed the jury to hear evidence that

three days after the September 8, 2004, robbery and after Munnerlyn was arrested, he called

someone from jail and asked the other person to hide or destroy something.

     *Nation-Wide* does not advance Munnerlyn's argument because the conclusions drawn by

that court do not support the proposition that the government must offer proof of what

Munnerlyn was discussing on the phone call before the jury is permitted to draw an adverse

inference from his statement. The *Nation-Wide* court noted the general principle that some

evidence of a destroyed document's contents must be offered to permit an inference to be drawn

about the contents. *Id.* at 217. But in Munnerlyn's case, the jury was not being asked to draw an

inference about *what* he wanted hidden or destroyed. The fact that Munnerlyn stated in a phone

conversation three days after the September 8, 2004, robbery that he wished the other party had

hidden or burned something proves that Munnerlyn wished the other party had hidden or burned

something, and it was permissible to allow the jury to infer that the statement was related to the

recent robbery.

     Taking a maximal view of the probative value of Munnerlyn's phone conversation and a

minimal view of its unfair prejudicial effect, it was not an abuse of discretion to allow the

September 11, 2004, recording. The tape recording includes probative evidence suggesting

Munnerlyn's consciousness of guilt. *See United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th

7

Cir. 1986). It was not unfairly prejudicial to allow the jury to infer that Munnerlyn's statement was related to the robbery even though there was no direct evidence presented as to what he was discussing. Unlike *United States v. Copeland*, 321 F.3d 582 (6th Cir. 2003), another case cited by Munnerlyn, in which statements by the defendants that they wanted to harm the government attorney who was prosecuting their case would "cast an extremely negative light upon their characters" and cause the jury to make "impermissible inferences," in Munnerlyn's case, the jury could draw the permissible inference that his statement that he wanted to hide or destroy something was related to the robbery. *Id.* at 598. In contrast to the *Copeland* defendants, and as noted by the district court, Munnerlyn could provide a reasonable explanation for the conversation. The unfair prejudice that threatened the *Copeland* defendants was not present in Munnerlyn's case.

Although the lack of evidence as to what Munnerlyn wanted hidden or destroyed arguably reduces the probative value of his statement, what weight to give the statement was for the jury to decide, and Munnerlyn has not shown that its admission into evidence was unfairly prejudicial. Allowing the jury to hear the September 11, 2004, phone conversation was not an abuse of discretion by the district court.

## III.

Finally, Munnerlyn argues that the district court erred in admitting four taped phone conversations, including the September 11, 2004, conversation, because the government failed to

8

establish a foundation for the recordings.[2] Munnerlyn never raised an objection to the admission of the tapes based on this reasoning.

If no objection to the introduction of the evidence is made in the trial court, this Court conducts a review for plain error. Fed. R. Crim. P. 52(b); *United States v. McBride*, 362 F.3d 360, 373 (6th Cir. 2004). "Under plain-error review, the appellant must show (1) that there was an error, (2) that is clear and obvious, and (3) that affects substantial legal rights." *United States v. Angel*, 355 F.3d 462, 469 (6th Cir. 2004). If the first three factors exist, the Court considers whether to exercise its discretionary power under Rule 52(b) and decides whether the plain error affecting substantial rights also "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations omitted). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988).

Under Federal Rule of Evidence 901(a), a party authenticates a document by presenting evidence sufficient to support a finding that the document is what the party claims it to be. The government did not present a witness to testify as to the tapes' authenticity. Munnerlyn, as noted, never objected during the trial to the government's failure to authenticate the tapes, and he presents no argument on appeal that the district court's admission of the tapes affected his substantial legal rights. Even if the government failed to lay a proper foundation, Munnerlyn has not shown that admitting the taped telephone conversations was prejudicial and affected the

---

[2] In the second taped conversation, Munnerlyn discusses shaving before going to trial. During the third and fourth conversations, he discusses alibi witnesses.

outcome of his trial. In light of the testimony from several bank employees who identified him as the man who robbed their bank in April, June, and September of 2004, admitting the tapes of Munnerlyn's phone conversations did not constitute plain error.

## IV.

For the reasons stated above, we **AFFIRM** the decision of the district court.