RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0278p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*

No. 07-2187

TERRY BERNARD MICHAEL,

  *Defendant-Appellant.*

—————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00264—Robert Holmes Bell, District Judge.

Argued: March 9, 2009

Decided and Filed: August 11, 2009

Before: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

—————————

**COUNSEL**

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Sean C. Maltbie, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, Thomas F. Goeke, Jr., LAW OFFICE OF THOMAS F. GOEKE, JR., Covington, Kentucky, for Appellant. Sean C. Maltbie, Phillip J. Green, ASSISTANT UNITED STATES ATTORNEYS, Grand Rapids, Michigan, for Appellee.

—————————

**OPINION**

—————————

KETHLEDGE, Circuit Judge. Terry Bernard Michael appeals his convictions and sentence following a jury trial on drug and firearms charges. Michael challenges the sufficiency of the evidence supporting his convictions, and contends that the district court failed to recognize its discretion to disagree with the so-called 100:1 ratio (concerning the

1

treatment of crack and powder-cocaine offenses) as implicitly incorporated into the Sentencing Guidelines' career-offender provisions.  We affirm.

I.

On August 31, 2006, two undercover police officers approached Michael outside an apartment building in Grand Rapids, Michigan.  The officers told him they wanted to purchase $40 worth of crack cocaine.  Michael responded that he could "take care of" them, and then walked around the corner.  He returned approximately two minutes later and sold them two rocks (.67 grams) of crack cocaine.  The sale occurred approximately three hundred feet from a high school.

The police did not arrest Michael immediately.  Instead, several weeks later, they obtained a warrant for his arrest and a search warrant for the apartment overlooking the drug sale, which was leased to Michael's girlfriend, Michelle James.  On September 27, officers arrested Michael and executed the search warrant.  In the apartment's bedroom, they found a shoe box containing 19.01 grams of crack cocaine, 14.27 grams of powder cocaine, a digital scale and two razor blades (all of which had cocaine residue on them), empty sandwich bags, and a loaded Smith & Wesson .38-caliber revolver with an obliterated serial number.  The police also found Michael's Michigan photo identification, his clothes, and pictures taken inside the apartment of Michael, James, and their son.  After the search, James signed an officer's notes indicating that she had seen Michael selling drugs "[a] couple times . . . out on the street."

Michael was charged with seven drug and firearms offenses.  Two counts were for distributing crack cocaine within 1,000 feet of a school.  The remaining five counts related to the drugs and firearm found in the apartment:  namely, possession with intent to distribute more than five grams of crack cocaine, possession with intent to distribute powder cocaine, possession of a firearm in furtherance of drug-trafficking offenses, being a felon in possession of a firearm, and possession of a firearm with an obliterated serial number.

The case proceeded to trial.  James testified that the drugs and firearm did not belong to her.  According to James, Michael stayed at her apartment at least three days a week, and kept some of his belongings there, including his clothes.  Some of her brothers and cousins

sometimes stayed at the apartment as well. James further testified that Michael had been in the apartment earlier on the day of the search, and had been in the apartment's bedroom. James had also seen Michael carry the shoe box in which the drugs and firearm later were found into the bedroom.

The jury convicted Michael of all charges. Michael had two prior felony controlled-substance-offense convictions, so he was sentenced as a career offender under U.S.S.G. § 4B1.1. The district court sentenced Michael to 360 months' incarceration for the drug counts, concurrent with 120 months for the felon-in-possession count and 60 months for possession of a firearm with an obliterated serial number, and consecutive to 60 months for possession of a firearm in furtherance of drug-trafficking offenses, for a total of 420 months' incarceration. This appeal followed.

## II.

### A.

Michael challenges the sufficiency of the evidence supporting the jury's verdict on the drug-possession and firearms charges. Specifically, he argues that the evidence did not support a finding that he constructively possessed the drugs or firearm that were found in the apartment.

When reviewing the jury's verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Michael did not move for judgment of acquittal after the government's case-in-chief or at the end of trial, so our "review is limited to determining whether there was a manifest miscarriage of justice." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (internal quotation marks omitted). "A 'miscarriage of justice' exists only if the record is devoid of evidence pointing to guilt." *Id.* (internal quotation marks omitted).

That test is not even remotely met here. Michael stayed at least three times a week at the apartment in which the drugs and firearm were found. His girlfriend testified that he had been in the apartment's bedroom the day of the search and that she had seen him carry

the shoe box in which the drugs and firearm were found into the bedroom.  The police also found in the apartment Michael's photo identification, clothes, and pictures of him taken there.  Moreover, his girlfriend told the police that she had seen Michael selling drugs on the street "[a] couple times," and Michael's sale to the undercover police officers occurred on the street directly below the apartment.

From this evidence, a rational jury could have found beyond a reasonable doubt that Michael "exercise[d] dominion and control over" the drugs and firearm found in the apartment, which is to say that he constructively possessed them.  *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).  The jury's verdict therefore was supported by sufficient evidence.

B.

Michael also challenges his sentence.  Citing *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), he first argues that we must remand his case for resentencing "because the district court did not understand its ability to disagree with the Sentencing Guidelines 100:1 ratio for the treatment of crack cocaine offenses[.]"  Michael's Supp. Br. at 4.  In *Kimbrough*, the Supreme Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve [18 U.S.C.] § 3553(a)'s purposes[.]"  128 S. Ct. at 575.

The 100:1 ratio manifested itself in atypical fashion here.  The usual manner is by means of the drug-quantity table in U.S.S.G. § 2D1.1(c), which, at the time of Michael's sentencing, prescribed offense levels for crack defendants equal to those for powder defendants possessing 100 times the quantity of drugs.  (The Guidelines were later amended to reduce the base offense levels for most crack-cocaine offenses by two levels, *see* U.S.S.G., App. C, Amend. 706, but that amendment is not relevant here.)  Michael asserts that his base offense level for possession of both the crack and powder cocaine was 28 under the drug-quantity table, but that if he had possessed the same amount entirely in powder, his base offense level would have been only 14.  Thus, he argues, we should remand the case so that the district court can "evaluate this disparity in determining a reasonable sentence."  Michael's Supp. Br. at 5.

As Michael himself recognizes, however, the district court ultimately calculated Michael's Guidelines range under the career-offender provisions of U.S.S.G. § 4B1.1(c)(2), not under § 2D1.1(c)'s drug-quantity table. Section 4B1.1(c)(2) calculates a defendant's offense level based on the offense's statutory maximum, which for Michael's 21 U.S.C. § 841(a) conviction is life. *See* § 841(b)(1)(B)(iii). That calculation yields an offense level of 37 and a criminal history category of VI, *see* U.S.S.G. § 4B1.1(b), which is well above the offense level of 28 prescribed by the 100:1 ratio in the drug-quantity table. That means the ratio as set forth in the table had no effect upon his Guidelines range. *See id.*

But the 100:1 ratio affected Michael's sentence in another way. The ratio is reflected in the statutory maximum sentences prescribed in 21 U.S.C. § 841(b), which, as noted above, drive the calculation of offense level under the Guidelines' career-offender provisions. Had Michael possessed the same amount of powder rather than crack, his statutory maximum would have been 30 years' imprisonment rather than life. *See* § 841(b)(1)(C). That would have dropped his offense level from 37 to 34, and lowered his Guidelines range from 420 months to life, to 360 months to life. *See* U.S.S.G. § 4B1.1(c)(2)(B). The ratio as set forth in § 841(b) therefore had a significant effect upon Michael's Guidelines range, and thus likely his sentence. And Michael argues, albeit only generally, that "the rationale of *Kimbrough* is applicable even where the defendant received a Career Offender adjustment." Michael's Supp. Br. at 4. The question, then, is whether a district court may disagree with the 100:1 ratio as implicitly incorporated in U.S.S.G. § 4B1.1, just as it may disagree with that ratio as expressly set forth in the pre-amendment § 2D1.1(c).

We conclude the answer to that question is yes. As the Seventh Circuit observed in reaching the same result, "the Supreme Court has consistently reaffirmed that *all* of the sentencing guidelines are advisory." *United States v. Liddell*, 543 F.3d 877, 884 (7th Cir. 2008) (emphasis in original) (collecting cases). That holds true for the career-offender provisions just as it does any other provisions of the Guidelines. *Id.* at 885. A district court may lawfully conclude, therefore, that the policies underlying the career-offender provisions—including their implicit incorporation of the 100:1 ratio—yield a sentence "'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564 (quoting 18 U.S.C. § 3553(a)).

That is true notwithstanding 28 U.S.C. § 994(h), which provides that "[t]he [Sentencing] Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the [statutory] maximum term authorized" for a career offender. Per that directive, the Guideline ranges for career offenders are tied to the relevant statutory maximums; and the statutory maximums for crack and powder-cocaine offenses, as noted above, reflect the 100:1 ratio. Thus, one might argue, § 994(h) requires a district court to honor that ratio in sentencing career offenders convicted of crack offenses, by remaining within the Guidelines range.

But that argument founders on the text of § 994(h). By its terms, that subsection tells the Sentencing Commission, not the courts, what to do. *See United States v. Sanchez*, 517 F.3d 651, 653 (2d Cir. 2008) (§ 994(h) "is a direction to the Sentencing Commission, not to the courts"); *Liddell*, 543 F.3d at 884 (§ 994(h) "only addresses what the Sentencing Commission must do; it doesn't require *sentencing courts* to impose sentences 'at or near' the statutory maximum") (emphasis in original); *but see United States v. Vasquez*, 558 F.3d 1224, 1228 (11th Cir. 2009) (*Kimbrough* "cannot be read . . . to suggest that district courts may base their sentencing decisions on any disagreement they may have with the policy behind the career offender guidelines, which are directly driven by congressional pronouncement[,]" *i.e.*, § 994(h)). As the § 841(b) mandatory-minimums make clear, had Congress wanted to mandate certain *sentences* (as opposed to Guidelines ranges) for career offenders, it knew very well how to do so. And, as the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and its progeny make clear enough, a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it.

Nor does it matter that the ratio implicitly incorporated in § 4B1.1 is found in 28 U.S.C. § 841(b), as opposed to merely another Guidelines provision. Section 841(b), "by its terms, mandates only *maximum and minimum sentences*. . . . The statute says nothing about the appropriate sentences within these brackets, and we decline to read any implicit directive into that congressional silence." *Kimbrough*, 128 S. Ct. at 571 (emphasis added). We decline as well to infer from that silence an endorsement of the 100:1 ratio beyond its application to minimum and maximum sentences. So long as the actual sentence stays within those brackets, therefore, the court does not contravene any policy set forth in § 841(b).

All that said, Michael has not demonstrated a basis for remand here. Michael did not object to his sentence in the district court, so we review it only for plain error. *United States v. Alexander*, 543 F.3d 819, 825 (6th Cir. 2008). Error is plain only if, among other things, it is obvious or clear. *Id.* (internal quotation marks and alteration omitted). As the Seventh Circuit held when faced with the identical scenario, the district court's error, if any, in failing affirmatively to recognize its discretion to reject the statutory 100:1 ratio as implicitly incorporated into U.S.S.G. § 4B1.1 was not plain. *See Liddell*, 543 F.3d at 885. Moreover, the district court expressed no disagreement with any policy underlying the Guidelines, and instead affirmatively stated that it believed that Michael's sentence—420 months—was "sufficient, but not greater than necessary[.]" The district court did not plainly err, therefore, in imposing his sentence.

## C.

Michael also argues that his sentence of 420 months' imprisonment "was greater than necessary . . . [for] a 'run of the mill' low level drug offense[.]" Appellant's Br. at 11.

We review the reasonableness of Michael's sentence for an abuse of discretion, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, __U.S.__, 128 S. Ct. 586, 591 (2007). We apply a "rebuttable presumption of substantive reasonableness" to within-Guidelines sentences. *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007).

Michael's Guidelines range was 420 months to life. The offenses yielding that range were not "'run of the mill' low level drug offense[s.]" To the contrary, Michael was convicted of four serious drug crimes involving the possession and distribution of large quantities of crack and powder cocaine within 1,000 feet of a high school, and three serious firearms crimes involving his possession of a .38-caliber revolver with an obliterated serial number. Moreover, he committed all those offenses as a twice-convicted felon, out of prison on parole. The district court did not abuse its discretion in imposing a sentence—420 months' incarceration—at the very bottom of his Guidelines range for these crimes.

D.

Finally, Michael argues that "the case must be remanded for a new sentencing proceeding, [because] there was a conflict between the Appellant and his counsel which was not investigated by the court [and] which rendered the Appellant's representation ineffective." Appellant's Supp. Br. at 7. At sentencing, Michael complained to the district court that his lawyer—whom Michael himself retained—was "an ineffective counsel" because Michael had fired him prior to the hearing but the lawyer showed up anyway.

"Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006). "As a general rule, this Court will not review claims of ineffective assistance of counsel for the first time on direct appeal [unless] the record is adequately developed[.]" *United States v. Stuart*, 507 F.3d 391, 394 (6th Cir. 2007) (first alteration in original; internal quotation marks omitted).

Here, Michael did not file a § 2255 motion in the district court, and the record is entirely undeveloped regarding his counsel's effectiveness. We therefore decline to review Michael's ineffective-assistance claim in his direct appeal.

Michael's convictions and sentence are affirmed.