NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0126n.06

No. 07-2239

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

**FILED**
**Feb 25, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ANDREW M. KOSACK, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: KENNEDY, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Andrew Martin Kosack appeals the 96-month sentence imposed by the United States District Court for the Western District of Michigan after Kosack pled guilty to two counts of using a communication facility to commit a drug trafficking crime in violation of 21 U.S.C. § 843(b). Because the district court did not commit plain error in sentencing Kosack, we affirm.

I.

The underlying facts of this case are not in dispute. After receiving information from confidential informants that Kosack distributed controlled substances, an officer with the Mackinaw City Police Department searched Kosack's trash and found cocaine residue. Based on this evidence, the police obtained a search warrant and searched Kosack's home on February 9, 2007, finding crack cocaine as well as other drug-related evidence. On March 14, 2007, Kosack was indicted by a grand

1

jury for one count of possession with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Kosack executed a plea agreement with the government on May 7, 2007, agreeing to plead guilty in a superseding information to two counts of unlawful use of a communications facility in the commission of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 843(b). In return, the government agreed to move to dismiss the two charges from the indictment. Kosack stipulated in his plea agreement that the police found two Ziploc bags containing sixty-two and twelve grams, respectively, of crack cocaine during the search. The police also discovered, among other items, a digital scale, packaging materials, a revolver, and $2,000 during the search. Kosack's plea agreement stated that he admitted to having used the telephone to facilitate his crack cocaine distribution during January and February of 2007. The parties agreed that Kosack's relevant conduct involved at least 50 but less than 150 grams of crack cocaine for sentencing purposes.

On May 9, 2007, Kosack appeared before a magistrate judge and entered a plea of guilty to both counts of unlawful use of a communications facility. The district court subsequently accepted the magistrate judge's recommendation to accept the guilty pleas. Kosack filed a Sentencing Memorandum on September 19, 2007, the bulk of which opposed a proposed sentencing enhancement for obstruction of justice. The Sentencing Memorandum described Kosack's long history of substance abuse issues: Kosack first experimented with drugs at age fourteen, completed a residential substance abuse treatment program in 1986, and was thereafter able to abstain from drugs before eventually relapsing in 2000. The Sentencing Memorandum also noted that Kosack had undergone random drug testing since being released on bond following arraignment and had

repeatedly tested negative. The Sentencing Memorandum stated that Kosack was supported by a loving family and felt remorse about his actions. Finally, the Sentencing Memorandum explained that Kosack, subsequent to his arrest, opened a food vendor stand that had proven successful. Attached to the Sentencing Memorandum were ten letters from Kosack's family and friends describing his charm, intelligence, and plans for his food vendor stand.

At sentencing on September 25, 2007, the government stated that it had not filed a motion pursuant to United States Sentencing Guidelines ("Guidelines") § 5K1.1 for a downward departure based on Kosack's substantial assistance to the authorities although it had been mentioned as a possibility in the plea agreement. The district court accepted Kosack's plea agreement. After reviewing the Presentence Investigation Report, it denied the disputed enhancement for obstruction of justice after both the defense and the government agreed that such an enhancement was inappropriate because Kosack lacked any intent to obstruct justice.

The court adopted the Presentence Investigation Report in all other respects. Sentencing Tr. at 9. The Report calculated the drug quantity for purposes of determining Kosack's base offense level. Based upon a Michigan State Police laboratory analysis, the Presentence Investigation Report found that the total amount of crack cocaine discovered in Kosack's residence on February 9, 2007 was approximately 60 grams and the total amount of powder cocaine found was approximately 20 grams. One of the individuals Kosack used to distribute controlled substances was at Kosack's residence at the time of the search and was detained by the police for questioning. Based upon this individual's statements regarding the amount of cocaine he was given by Kosack on a weekly basis between 2004 and 2005, the Presentence Investigation Report held Kosack responsible for an

3

additional 416 grams of powder cocaine. Thus, the Presentence Investigation Report held Kosack responsible for a total of 60 grams of cocaine base and 436 grams of powder cocaine.

Defense counsel noted that there was a civil forfeiture action pending in which Kosack stood to lose many possessions as proceeds of his illegal drug activity. The government agreed that the civil forfeiture action was a significant penalty, stating that it would send a message to the community about the seriousness of Kosack's crime. Kosack addressed the court, expressing his remorse for his actions and describing his difficulty in starting his food vendor business because of various administrative hurdles. He stated that he turned to distributing cocaine because of financial problems and noted that almost all of his personal belongings had been seized in the civil forfeiture action. Kosack said that he had become "clean and sober" since his arrest and was able to start his hot dog vending business and therefore could be "a productive member of society." He asked, "Isn't there some form of punishment out there for me that can keep me going as a strong, hard-working member of society, paying taxes and adding to our economy?" Sentencing Tr. at 18. Kosack ended his statement with his belief that the Guidelines "are scary to me. I feel that they may not take into consideration the whole of the situation with me and my case. I know that you can go outside these guidelines using your own good judgment. I implore you to do so in my case. My family needs me." Sentencing Tr. at 18-19.

The district court said that the Guidelines "are intended to reflect the combined wisdom and actual results of literally thousands of independent sentencing decisions around the country" and that they are "policy judgments from the Congress and the body set up by Congress." Sentencing Tr. at 22-23. The district court described the Guidelines as giving him "something to tether my thinking and my exercise of judgment to, so it's not just me . . . telling you what your sentence is; but it's me

4

as an instrument of the law that is embodied in these guidelines that Congress has authorized." Sentencing Tr. at 23-24. The court recounted the Guidelines range of 135 to 168 months based on Kosack's criminal history category of III and offense level of 31. The court then explained that the statutory maximum sentence of 48 months per count, or 96 months for the two counts running consecutively, was lower than the otherwise applicable Guidelines range. The district court then sentenced Kosack to the statutory maximum of 48 months per count running consecutively, reciting several 18 U.S.C. § 3553 factors and stating:

> First off, probation is not an option in this case because, when you calculate the guidelines, you come to something called Zone D. The statute does not permit probation in that case. As I said, the guideline sentence for incarceration in this matter is 48 months per count, running consecutively, for a total of 96 months incarceration. That is a guideline sentence in this case, and that is the sentence I intend to impose. It is tethered to the statutory maximum. It is considerably below what the guideline range would ordinarily provide based on offense level and criminal history and, I should say, also significantly lower than they would have been in the absence of this particular plea agreement.
>
> I have also recalculated, just for my own benefit, these numbers under the November 1 amendments, if they go into effect, regarding crack cocaine. There is a further level reduction, but not to the point where the presumptive guideline even approaches the 48 month consecutive on two counts. So it's not material in this case.

Sentencing Tr. at 25-26. Defense counsel offered no objections to the sentence when asked by the court, "[a]ny nonredundant objections?" Kosack timely appealed.

## II.

Kosack argues that his sentence is procedurally unreasonable because the district court did not explain adequately its chosen sentence and did not consider the powder/crack cocaine disparity. Kosack also asserts that his counsel's failure to object to district court errors amounted to ineffective assistance of counsel. Because Kosack did not raise his objections to the sentence in the district court, we review under the "plain error" standard of review found in Federal Rule of Criminal

5

Procedure ("Rule") 52(b). *See United States v. Leachman*, 309 F.3d 377, 380 (6th Cir. 2002). Rule 52(b) provides that a "plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). The Sixth Circuit relies upon the four-part test set out by the Supreme Court to determine when a petitioner can obtain relief under Rule 52(b):

> Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. Where all three of these conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Meeker*, 411 F.3d 736, 741 (6th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)) (internal quotation marks omitted).

We review the district court's sentencing determination for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Id.* A sentencing court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The sentencing court may not presume that a Guidelines sentence should apply. *Id.* at 351. The recent decision *Spears v. United States* has made it clear that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." __ US. __, 129 S. Ct. 840, 843–44 (2009).

III.

Kosack contends that the district court committed plain error in failing to make an independent, individualized assessment of Kosack's sentence and failing to explain adequately its chosen sentence. The Supreme Court requires a sentencing judge to conduct individual assessments and the Court has suggested that district judges normally explain their reasons for rejecting a defendant's nonfrivolous arguments for leniency. *See Rita*, 551 U.S. at 339; *see also* 18 U.S.C. §3553(c) (stating that a sentencing court "shall state in open court the reasons for its imposition of the particular sentence"). "Although Congress requires a court to give 'the reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (*en banc*).

As in *Vonner*, where the district court "did not specifically address all of [the defendant]'s arguments for leniency," 516 F.3d at 386, here, the court did not specifically respond to Kosack's arguments for leniency based on his intelligence, support system, and remorse. The court here did not mention the significant punishment of civil forfeiture that Kosack faced, in which he would be required to forfeit his belongings that were purchased with drug proceeds, nor did it address Kosack's argument that he should be allowed to continue working at his small business as a productive member of society. Much like the district court's explanation in *Vonner*, one might not "call this explanation ideal." *Id.* A district court better advances the goals of sentencing when it clearly explains to the defendant why it has rejected his specific arguments for leniency. *See Rita*, 551 U.S. at 357-58. However, given the limited nature of our review, we find that the district court's

7

brief explanation for the sentence it imposed upon Kosack does not constitute plain error. *See Vonner*, 516 F.3d at 387.

Kosack has not demonstrated that the district court plainly erred in analyzing the § 3553(a) sentencing factors and Kosack's arguments for leniency. The district court mentioned the sentencing factors and stated that probation was not permissible. *See* U.S.S.G. § 5C1.1(f). The district court noted that the Guidelines sentence would be 48 months on each count running consecutively, for a total of 96 months, which was "significantly lower" than the 135 to 168 month range that would have been applicable in the absence of a plea agreement. In addition, the sentencing judge described his intended sentence as "tethered to the statutory maximum" and mentioned Kosack's "rather significant criminal history," while acknowledging that Kosack had not previously been incarcerated for any length of time longer than 120 days. Sentencing Tr. at 26. Finally, the district court expressed awareness that a 96-month sentence of incarceration would be a "hitting-the-wall kind of experience" for Kosack, indicating its apparent recognition of Kosack's remorse and the life-altering nature of such a sentence. Sentencing Tr. at 27. As in *Vonner*, "[o]n this record, we cannot say that any error was so plain or obvious that the judge was 'derelict in countenancing it.'" 516 F.3d at 388 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (internal quotation marks omitted)).

## IV.

The district court sentenced Kosack before the Supreme Court held in *Spears* that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." 129 S. Ct. at 843-44. This decision expounded upon the Supreme Court's earlier statement in *Kimbrough v. United States*, 552 U.S. 85, 110 (2007), that

a district court would not abuse its discretion by concluding "when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." The district court's statement in sentencing Kosack that the Guidelines are "policy judgments from the Congress and the body set up by Congress" was incorrect insofar as the crack-cocaine Guidelines "do not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role. . . . Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions." *Id.* at 109–10.

Our post-*Spears* jurisprudence has wrestled with the difficulty of ascertaining whether a district court recognized its authority to depart from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines. *Spears* was decided on January 21, 2009, and this court vacated a defendant's sentence and remanded five days later in *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009). We held that "[o]n the record before us, we have no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Id*. at 996 n.1.

We apply a plain error standard of review under *Vonner* because Kosack did not argue to the sentencing court that it could disagree with the Guidelines categorically. We recently emphasized *Vonner* and applied plain error review to a defendant's claim that the district court failed to consider an argument that the district court could reject the crack cocaine Guidelines categorically. *See United States v. Simmons*, 587 F.3d 348, 363 (6th Cir. 2009). We used plain error analysis because the defendant did not object to the district court's failure to consider his arguments at the conclusion of his sentencing hearing on March 7, 2007, before *Spears* was handed down. *Id*. We concluded,

9

"[t]he district court's failure to speak directly to its own power to depart from the Guidelines for policy reasons does not supply a basis for inferring plain error. Nor does it warrant appellate remand." *Id*. at 365. As in this case, the district court in *Simmons* did not state affirmatively whether categorical departures were permissible, but we determined that "the defendant bears responsibility for this silence in the sentencing record under . . . *Vonner*." *Id*. at 364 n.9. If *Vonner* required plain error review when the defendant failed to preserve properly the failure to explain rejection of a sentencing argument he made twice, then we are bound to apply plain error in Kosack's case. *See also United States v. Michael*, 576 F.3d 323, 328 (6th Cir. 2009) (applying plain error analysis and holding that the district court's error, if any, in failing "affirmatively to recognize its discretion to reject the statutory 100:1 ratio as implicitly incorporated into U.S.S.G. § 4B1.1 was not plain").

In recent cases, we have refined *Johnson* to emphasize that a remand is not warranted where we have "no basis to assume that the district court was unaware of its authority [to vary categorically] or would have imposed a different sentence post *Spears*." *United States v. Richardson*, No. 07-3459, 2009 U.S. App. LEXIS 24779, at *16 (6th Cir. Nov. 10, 2009) (quoting *United States v. Porter*, 312 F. App'x 772, 775–76 (6th Cir. 2009)). In *Richardson*, we declined to remand because the district court "repeatedly noted the advisory-only nature of the guidelines" and because "the issue of the crack/powder was not raised in any manner during the sentencing hearing." *Id*. Because this court "presume[s] that the district court understood its discretion, absent clear evidence to the contrary," *id*. at *17 (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)), we held that a remand was inappropriate "[g]iven the absence of *any* discussion of the disparity," *id*. at *16 (emphasis in original). Furthermore, in *United States v. Cole*, we found no error requiring remand because there was no indication that the district court felt bound by the

Guidelines and no indication that the district court would impose a different sentence on remand. No. 07-5563, 2009 U.S. App. LEXIS 18894, at \*20–21 (6th Cir. Aug. 21, 2009). The district court in that case made it clear that it wanted to send a message to crack dealers and that it sentenced the defendant at the low end of the Guidelines range only because he had offered substantial assistance to the Government in other investigations. *Id*. at \*21–22. Thus, in sentencing Cole, the district court recognized that the Guidelines were advisory and made comments on the record indicating that the sentence would not change on remand because it agreed with the crack cocaine Guidelines.

On the other hand, we have remanded for consideration of *Spears* when "the district court has made express statements indicating its inability to disagree with the guidelines on policy alone," *id*. (citation omitted), or "the transcript of the sentencing hearing suggests that [the district judge] may have acted in adherence to those principles," *United States v. Maye*, 582 F.3d 622, 633 (6th Cir. 2009); *see also United States v. Guest*, 564 F.3d 777, 779, 781 (6th Cir. 2009) (holding that "there should be some indication of error in the record justifying remand" and cautioning that remand is not warranted "based on mere conjecture that the district court may have felt constrained by appellate remand").

In this case, the district court did not indicate that it was unable to disagree with the Guidelines nor did it act as if it were bound by them. Moreover, there is nothing in the record showing that Kosack's sentence would have been different had the district court considered *Spears*. Thus, we find no plain error in the district court's consideration of the crack cocaine Guidelines. Kosack's Guidelines range for use of a communication facility in committing a drug offense is the offense level applicable to the underlying offense. *See* U.S.S.G. § 2D1.6(a). The Guideline for Kosack's underlying offense of possession with intent to distribute more than 50 but less than 150

11

grams of cocaine base calls for a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (May 1, 2007 edition). Based on Kosack's criminal history category of III and an adjusted offense level of 31, the district court correctly identified the applicable Guideline range to be 135 to 168 months. Because this was higher than the statutory maximum sentence, the statutory maximum of 48 months per count running consecutively became the Guideline sentence.

The district court also correctly noted that under a then-pending amendment to the crack-cocaine guidelines, Kosack's range would drop to 108 to 135 months imprisonment, but considered this to be immaterial to his sentence because it was still higher than the statutory maximum of 96 months imprisonment. The pending amendment would have had "the effect of reducing by two levels the base offense level for most cocaine-base offenses." *United States v. Johnson*, 569 F.3d 619, 624 (6th Cir. 2009). Thus, the district court correctly calculated the applicable Guidelines under the amendment given that Kosack was in criminal history category III and would have had an adjusted offense level of 29.

The district court briefly discussed the possibility of the amendment's reduction in the base level for crack-cocaine offenses and considered it not to be relevant in Kosack's case. Although we have no affirmative recognition by the district court of its categorical authority to vary from the crack-cocaine Guidelines, we also have no "indication of error" that the district court felt constrained by those Guidelines. *See Guest*, 564 F.3d at 779. Moreover, in its mention of the amendment, we have an indication of the court's awareness of the issues surrounding the crack/powder disparity. This inference is bolstered by the fact that the district court correctly calculated Kosack's Guidelines range under the then-pending amendment. The district court listened to the arguments presented and gave "no basis to assume that the district court was unaware of its authority or would have imposed

12

a different sentence post *Spears*." *Porter*, 312 F. App'x at 776. The district court, perhaps, would have been well-advised to provide greater detail in its analysis and consideration of the crack/powder cocaine disparity as it related to Kosack to provide information both to Kosack and to our court. On these facts, however, we cannot say that the district court committed plain error in its consideration of the crack cocaine Guidelines.

In his brief before this court, Kosack points out, in the section challenging the adequacy of the district court's assessment of the statutory sentencing factors, that if the district court had disregarded the crack/powder cocaine disparity of the Guidelines (and the disparity incorporated in the proposed amendment), he would have been sentenced based on 496 grams of powder cocaine instead of 60 grams of crack cocaine and 436 grams of powder cocaine. In that event, Kosack would have had a total offense level of 23, a criminal history category of III, and a Guidelines range of 57 to 71 months imprisonment. Under plain error review, this possibility of application of a 1:1 crack/powder ratio is simply beside the point.

Given the timing of Kosack's sentencing, any error was not plain. Nor can it be said to have affected his substantial rights. Kosack entered into a very favorable plea agreement. His sentence would not have changed even if he had been sentenced after the Guidelines amendment addressing the crack/powder disparity. And the district court did not suggest that the Guidelines disparity bound it in any way.

V.

Kosack's final contention is that he received ineffective assistance of counsel because his counsel failed to object to the trial court's explanation of Kosack's 96-month sentence, failed to present the crack/powder cocaine disparity for the court's consideration, and failed to challenge

13

Kosack's arguably erroneous criminal history scoring.  As a general rule, we do "not review such claims on direct appeal, preferring that the defendant raise such claims (if at all) in a § 2255 petition."  *United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).  The reason for this is because ineffective assistance of counsel claims are typically fact-based, and appeals courts are not well equipped to resolve factual matters without a complete record.  *See Meeker*, 411 F.3d at 748-49.  "An exception exists, however, when the record is adequately developed to allow this Court to assess the merits of the issue."  *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).

Kosack has offered substantive arguments for why he received ineffective assistance of counsel but has failed to offer any argument rebutting the general rule that ineffective assistance of counsel claims should be raised in a 28 U.S.C. § 2255 proceeding rather than on direct appeal.  *See Quinlan*, 473 F.3d at 280 (declining to reach ineffective assistance of counsel argument where defendant "offered no good reason for diverging from" the practice of hearing those claims in a § 2255 proceeding).  Moreover, *Hall* only recognized an exception and reached the merits of an ineffective assistance of counsel claim on direct appeal because the case involved a conflict of interest based on dual representation that had been addressed by the district court several times.  *See Hall*, 200 F.3d at 962.  In contrast, Kosack's claims that his trial counsel performed inadequately were never addressed by the district court and cannot be properly evaluated without further factual development.  *See, e.g.*, *Meeker*, 411 F.3d at 749 ("Absent an evidentiary hearing, we cannot determine whether [trial] counsel had a strategic justification for his actions at the sentencing hearing.").  As in *Meeker*, there are several possible reasons why Kosack's counsel argued the way he did, and the panel cannot determine whether Kosack received ineffective assistance of counsel

on this record.  Therefore, we decline to address Kosack's claim of ineffective assistance of counsel and note that Kosack "is free to raise the issue in a postconviction proceeding under 28 U.S.C. § 2255 where a more complete factual record may be developed." *Id.*

VI.

For the foregoing reasons, we affirm Kosack's sentence.