<u>**NOT RECOMMENDED FOR PUBLICATION**</u>
File Name: 20a0702n.06

Case No. 20-1191

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 16, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| FREDDIE LEE WILSON, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: COLE, Chief Judge; DONALD and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** After orchestrating a series of controlled drug buys from Freddie Wilson, officers executed a search warrant at 902 Smith Avenue, the home of Wilson's daughter and her mother, where Wilson regularly stayed. Inside the home, detectives found a significant quantity of drugs and a firearm. A jury later convicted Wilson of three counts related to the drugs and firearm. On appeal, Wilson argues that the government did not present sufficient evidence to prove he possessed the drugs and firearm, and that the district court improperly admitted evidence of an uncharged controlled buy. Neither argument is persuasive. Accordingly, we affirm.

**BACKGROUND**

Over the course of several weeks, officers executed a number of controlled drug buys from Wilson. In setting up the fourth and final buy, officers observed Wilson drive from 902 Smith Avenue to a nearby store parking lot. When he arrived, Wilson sold a confidential informant an ounce of crack cocaine, which the informant purchased with $1,200 in pre-recorded bills.

As officers prepared to execute a search warrant at 902 Smith the following day, they observed Wilson leave the home in the same vehicle he had driven to the earlier controlled buys. Officers arrested Wilson approximately a half-mile from the home. A search of Wilson and the vehicle uncovered $9,864 in cash—including $980 of pre-recorded bills from the previous day's sale—and two cell phones.

Returning with Wilson to 902 Smith, officers used Wilson's key to enter the home. A search of the home revealed 187.46 grams of cocaine, 31.10 grams of cocaine base (crack cocaine), and 28.11 grams of a heroin/fentanyl mixture. The drugs, as well as a digital scale, were in a cabinet to the left of the kitchen sink. In a cabinet to the right of the sink, officers discovered a loaded handgun, which had been stolen. Officers also found mail on the kitchen table addressed to Wilson at the 902 Smith address and discovered male clothing and hygiene products in the home. During the search, Wilson told the officers that he "stayed" at 902 Smith with his daughter and her mother, Maylynn Garza.

A federal grand jury indicted Wilson on three counts: (1) possession with intent to distribute 28 grams or more of cocaine base, cocaine, heroin, and fentanyl, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) knowingly being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Before trial, the district

court ruled that the government could admit evidence related to the officers' final controlled drug buy from Wilson, for which Wilson was not charged. The court determined that the evidence was admissible as intrinsic background evidence, *see, e.g.*, *United States v. Chalmers*, 554 F. App'x 440, 450–51 (6th Cir. 2014), or, alternatively, as other-act evidence under Federal Rule of Evidence 404(b). During trial, the government offered the testimony of six law enforcement officials involved in the final controlled buy and in executing the search warrant. The jury returned a guilty verdict on all three counts.

On appeal, Wilson argues that the government's evidence was insufficient to prove he possessed the drugs and firearm found at 902 Smith, requiring that we vacate his convictions and enter a judgment of acquittal. At the very least, he argues, he is entitled to a new trial because the district court improperly admitted evidence related to the uncharged drug sale.

## ANALYSIS

*Evidence of Guilt.* Wilson begins with the contention that the government's evidence was insufficient to support the jury's verdict. Because Wilson failed to move for judgment of acquittal at the close of the government's case-in-chief or at the close of evidence, we consider his argument only in the context of "whether the trial resulted in a 'manifest miscarriage of justice,'" *United States v. Williams*, 612 F.3d 417, 423 (6th Cir. 2010) (citation omitted); *United States v. Jordan*, 544 F.3d 656, 670 (6th Cir. 2008); *see also* Fed. R. Crim. P. 29(a), in other words, whether "the record is 'devoid' of evidence of guilt," *Williams*, 612 F.3d at 423 (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)).

With possession being an element of all three counts, Wilson disputes whether the record contains evidence that he constructively possessed the drugs and firearm found at 902 Smith. Constructive possession, which may be proven by direct or circumstantial evidence, *United States*

*v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013), "exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object," *United States v. Raymore*, 965 F.3d 475, 483 (6th Cir. 2020) (citation omitted). While physical proximity alone is insufficient to prove constructive possession of drugs or a firearm, *see id.*; *United States v. Smith*, 20 F. App'x 258, 267 (6th Cir. 2001), that proximity combined with other incriminating evidence can "tip the scale in favor of constructive possession," *Raymore*, 965 F.3d at 484 (quoting *United States v. Curruthers*, 511 F. App'x 456, 459 (6th Cir. 2013)).

All things considered, the evidence was sufficient to prove Wilson's constructive possession of the drugs and firearm at 902 Smith, especially when measured against the manifest miscarriage of justice standard. Wilson "stayed" at 902 Smith, had a key to the home, had mail addressed to him there (which was discovered in the kitchen near the drugs and firearm), and sold the same type of drug found in the home to a confidential informant. Compare this record to that in *United States v. Michael*, 576 F.3d 323 (6th Cir. 2009). Michael sold crack cocaine to undercover officers near his girlfriend's apartment, where Michael resided. *Id.* at 325. Officers later seized 19 grams of crack cocaine, a digital scale, and a firearm from the apartment. *Id.* Because Michael stayed at the apartment three nights a week, kept clothing there, and sold the same type of drug found in the apartment to undercover officers, he was deemed to have constructively possessed the drugs and firearm found there. *Id.* at 326. If the record in *Michael* was not devoid of evidence of Michael's constructive possession, the same must be true here.

We acknowledge, as Wilson emphasizes, that simply being near contraband typically would not be enough to find constructive possession. That proximity, rather, must be coupled with other incriminating evidence. *Raymore*, 965 F.3d at 484. But consider the incriminating evidence present here. Wilson left a residence at which he regularly stayed to make a drug sale (which,

unbeknownst to him, was to a confidential informant). There, he sold the same type of drug officers later found in the residence. Those facts, coupled with the large quantity of drugs stashed near a stolen firearm in the home as well as the significant amount of cash in Wilson's possession when he was arrested, strongly suggest that Wilson possessed those drugs with the intent to distribute. *See, e.g.*, *United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011). More than "mere proximity," in other words, connected Wilson to the seized contraband.

Wilson next contends that because he stayed at 902 Smith with Garza, proof of his occupancy alone cannot establish constructive possession without additional evidence. On this point, Wilson cites *United States v. Griffin*, 684 F.3d 691, 696–97 (7th Cir. 2012), where the Seventh Circuit held that constructive possession occurs only when "facts demonstrate[] not just a substantial connection between the defendant and the location, but also a substantial connection between the defendant and the contraband itself." Setting aside the fact that this "substantial connection" standard comes from another circuit, even measured by that standard, the evidence here fairly links Wilson not just to 902 Smith, but also to the contraband. Officers observed Wilson sell cocaine base, a drug also found in the home. When detectives arrested Wilson, he had with him a large amount of cash (including pre-marked bills from the previous day's sale) as well as multiple cell phones, all of which, according to expert testimony, are tools of drug dealers and indicative of drug distribution. So too, according to the trial testimony, are the quantity of drugs, the scale and packaging materials, and the firearm found at 902 Smith. Collectively, this evidence permits the inference that Wilson possessed the drugs and firearm at 902 Smith—and not just because he frequently stayed there. Wilson thus fails to show that his convictions amount to a manifest miscarriage of justice. *See Raymore*, 965 F.3d at 484 (finding no miscarriage of justice

when the record contained at least "some" evidence of the defendant's guilt); *United States v. Clemons*, 427 F. App'x 457, 461 (6th Cir. 2011) (same).

*Admission of Uncharged Drug Sale Evidence.* Wilson also challenges the district court's decision to admit evidence related to his uncharged drug sale. According to Wilson, that evidence was neither background evidence nor other-act evidence admissible under Federal Rule of Evidence 404(b). We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Dunnican*, 961 F.3d 859, 873–74 (6th Cir. 2020). An abuse of discretion occurs when the district court "(1) misunderstood the law . . . , (2) relied on clearly erroneous factual findings, or (3) made a clear error of judgment." *United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020).

As a starting point, Rule 404(b) instructs that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). A notable exception to this rule is for "intrinsic act[]" evidence, which includes "background" or "*res gestae*" evidence. *United States v. Sumlin*, 956 F.3d 879, 889–90 (6th Cir. 2020); *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). We allow admission of background acts that are "inextricably intertwined with evidence of the crime charged," making them part of "a single criminal episode," *Sumlin*, 956 F.3d at 889 (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (cleaned up)), or "part of a continuing pattern of illegal activity," *Barnes*, 49 F.3d at 1149. "Proper background evidence," we have explained, "has a causal, temporal or spatial connection with the charged offense," and usually "is a prelude to the charged offense, is directly probative of the charged offense, [or] arises from the same events as the charged offense." *Sumlin*, 956 F.3d at 890 (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).

Measured against this standard, evidence of Wilson's uncharged drug sale was admissible background evidence. Consider the temporal and causal proximity between Wilson's uncharged drug sale and his charged offenses. The uncharged sale occurred just a day before Wilson's arrest. Officers observed him travel directly from 902 Smith to the deal location. And Wilson sold the same type of drug that officers discovered in the home. That near proximity is not unlike the facts of *United States v. Chalmers*, where testimony about Chalmers's uncharged prior marijuana sales was deemed to be admissible background evidence that was probative of his charge of possession with intent to distribute. 554 F. App'x at 451. Notable there was the fact that Chalmers's marijuana sales occurred within two weeks of his arrest, were made in the home where the drugs leading to his arrest were found, and involved the same type of drug seized from the home. *Id.* at 451 (finding the defendant's prior marijuana sales "shed[] light on [his] relationship to the residence and to the drugs found there"). As the evidence here likewise suggested that the uncharged sale was part of a pattern of illegal activity probative of Wilson's connection to 902 Smith, the district court did not abuse its discretion in admitting evidence of the uncharged sale.

Wilson responds that "[a] drug sale at one location . . . does not prove anything about the defendant's possession of drugs at a different location." But this is the wrong lens through which to view the issue. For background evidence, the district court considers only whether the evidence is *probative* of the charged offense, not whether it *proves* an element of the offense. *See Sumlin*, 956 F.3d at 889 (explaining that Rule 404(b) "does not apply to evidence that itself is *probative* of the crime charged" (emphasis added) (quoting *United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003))); *United States v. Stafford*, 232 F. App'x 522, 527 (6th Cir. 2007) (finding background evidence admissible because it was "directly *probative* of the charged offense" (emphasis added)). The jury, on the other hand, is responsible for weighing the evidence and deciding whether it

proves the existence of a fact. *Cf. United States v. Munnerlyn*, 202 F. App'x 91, 95 (6th Cir. 2006) (finding evidence admissible despite reduced probative value and explaining that "what weight to give the statement was for the jury to decide"); David L. Faigman, *Evidence: Admissibility vs. Weight in Scientific Testimony*, 1 Judges' Book 45, 45 (2017) ("Fundamental to all evidence codes is the distinction between admissibility and weight. Judges decide admissibility, and, if the evidence is admitted, jurors decide what weight to give it."). What the district court had to decide, in other words, was whether the evidence was probative of Wilson's charged crimes. As we have explained, it was. And because the district court properly admitted the evidence at issue as background evidence, we need not address whether the evidence was also admissible under Rule 404(b). *See Sumlin*, 956 F.3d at 891.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.