In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 07-3373

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA M. LIDDELL,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 CR 40008—**J. Phil Gilbert**, *Judge.*

————————

ARGUED MAY 8, 2008—DECIDED SEPTEMBER 10, 2008

————————

Before MANION, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendant Joshua Liddell pled guilty to two federal drug charges and was sentenced to 240 months in prison as a career offender. He claims the district court erred by not grouping these two charges together when it calculated his sentencing guideline range. Liddell also contends that resentencing is necessary in light of the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and he

claims that his sentence is unreasonable. We conclude *Kimbrough* does not affect Liddell's sentence on count one and the district court did not err in issuing this sentence. Pursuant to the parties' stipulation, we issue a limited remand on count two in light of *Kimbrough.*

## I. BACKGROUND

This is the second time we have encountered this case. Because we already discussed the underlying facts in some detail in our previous opinion, we will only mention the facts necessary to resolve this appeal. *See United States v. Liddell*, 492 F.3d 920 (7th Cir. 2007).

On May 4, 2006, Liddell pled guilty to two counts of possession with the intent to distribute five grams or more of a mixture or substance containing cocaine base. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). The charges were based on incidents occurring on May 9, 2003 (count two) and November 22, 2005 (count one).

In between these two incidents, Liddell was convicted in Illinois state court of two other felonies—possession with intent to distribute cocaine and aggravated domestic battery—for which he served 60 days' imprisonment. For count one of the federal charges (corresponding to the last drug transaction), the district court had to decide whether the two prior state convictions qualified Liddell for sentencing as a career offender. *See* United States Sentencing Commission Guidelines Manual (U.S.S.G.) § 4B1.1 (2006) (to be eligible for career offender sentencing, a defendant must have "at least two prior

felony convictions of either a crime of violence[1] or a controlled substance offense"). Adopting the probation office's recommendation, the court concluded that the state conviction for cocaine possession was related to the conduct charged in count one and did not count toward career offender status. So the court did not apply the career offender guidelines and sentenced Liddell to the statutory minimum of 120 months' imprisonment on count one, and 105 months' imprisonment on count two, with the sentences to run concurrently.

The government appealed the district court's sentence. We vacated the sentence and remanded, concluding that the state cocaine conviction was not related to the charged conduct and so the court should have applied the career offender guidelines when sentencing Liddell on count one. *See Liddell*, 492 F.3d at 922-24 (citing *United States v. Hernandez*, 330 F.3d 964, 987 (7th Cir. 2003)). On remand, the district court computed the sentencing guideline range for each count separately (rather than grouping the two counts and calculating a single range) and determined that the career offender provisions yielded a range of 262-327 months' imprisonment on count one. The court then sentenced Liddell to a below-guideline term of 240 months' imprisonment on count one,

---

[1] Although the Supreme Court recently limited what constitutes a "crime of violence," *see Begay v. United States*, 128 S. Ct. 1581, 1588 (2008), Liddell does not argue that aggravated domestic battery is not a crime of violence, so we do not consider that issue here.

and 87 months' imprisonment on count two, to run con-currently. Liddell then filed this appeal.

## II. ANALYSIS

### A. The district court properly declined to group counts one and two.

Liddell claims the district court should have grouped counts one and two together before determining whether he was a career offender. We review the court's decision not to group these counts de novo. *United States v. Alcala*, 352 F.3d 1153, 1156 (7th Cir. 2003); *United States v. Sherman*, 268 F.3d 539, 545 (7th Cir. 2001). Liddell seems to believe (but doesn't explicitly argue) that if the counts are grouped, his two intervening state convictions would no longer be "prior felony convictions" because they would occur after the earlier of the two grouped offenses, and so Liddell could not be sentenced as a career offender. We do not agree, however, that grouping the two counts would change Liddell's career offender status. Even if the two counts were grouped, we would use the date of the *later* offense in the group in determining whether the unrelated state felony convictions were "prior" to the group. *See United States v. Belton*, 890 F.2d 9, 10 (7th Cir. 1989) ("Nothing in the guidelines' definition of a career offender requires . . . that every act constitutive of the offense underlying his current conviction have been committed after the prior conviction, and we can think of no reason for such a requirement."). We have suggested that an unrelated felony conviction is "prior" to a con-spiracy for purposes of the career offender guidelines

when the conspiracy begins before the conviction and continues afterward. *Id.* at 10-11; *see also United States v. Garecht*, 183 F.3d 671, 675 (7th Cir. 1999) (modifying *Belton* by holding that a felony conviction that occurs during an ongoing conspiracy can be a "prior" conviction only if it is unrelated to the conspiracy).

Similarly, it makes sense that an unrelated felony conviction is prior to a "group" of offenses if the conviction occurs before at least one of the offenses in the group. To hold otherwise would lead to a nonsensical result—Liddell would be better off because he was charged with two grouped offenses that straddled his unrelated state felony convictions than if he had been charged on just count one (which involved the later-occurring offense in the group). *See Belton*, 890 F.2d at 10-11 (noting that "[t]he only practical effect" of a similar argument in the drug conspiracy context "would be to give the government an incentive to seek conviction for only so much of the defendant's participation in the continuing conspiracy as postdated his prior conviction").

At any rate, we already explained why count one and count two are unrelated and should not be grouped together:

> Liddell's state incarceration separated the conduct charged in Count One from the conduct charged in both his state conviction and in Count Two, [so] we find that those earlier offenses are not related to Count One. . . .

> The guidelines explicitly state that district courts should compute sentencing guideline ranges on a

count-by-count basis. *See* U.S.S.G. § 1B1.1(d); *see also United States v. De la Torre,* 327 F.3d 605, 609 (7th Cir. 2003). . . . Liddell [should have been] sentenced as a career offender for [count one] and not [count two]. To hold otherwise not only would conflict with the guidelines, but it would strain judicial resources by forcing the government to bring multiple, separate indictments against defendants like Liddell to ensure that such defendants do not get a more lenient sentence simply because all of their offenses are consolidated in a single indictment.

*Liddell*, 492 F.3d at 924. Although Liddell claims the "law of the case" doctrine doesn't preclude us from changing this decision, he hasn't provided a good reason for us to revisit the issue. And the two federal drug charges—which are based on incidents separated by more than two-and-a-half years—do not involve the same victim or the same transaction, and do not seem to be otherwise related. *See* U.S.S.G. § 3D1.2. Therefore, we conclude the district court correctly determined that the counts should not be grouped.

**B.  The Supreme Court's decision in *Kimbrough v. United States* does not require us to remand for resentencing.**

At oral argument, we asked the parties whether the Supreme Court's recent decision in *Kimbrough,* 128 S.Ct. at 564, had any effect on this case. The parties filed supplemental memoranda addressing this issue. They stipulated to a limited remand on count two (corresponding to the

earlier incident) pursuant to the procedure set forth in *United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008). However, the government opposed any remand on count one (corresponding to the later incident).

When Liddell was sentenced, U.S.S.G. § 2D1.1 stated that individuals who deal in cocaine base (including crack)[2] are subject to the same guideline range as those who deal in 100 times as much powder cocaine. This 100-to-1 (or "crack/powder") disparity is also part of the federal controlled substances statute. 21 U.S.C. § 841(b)(1).

After the Supreme Court decided that the federal sentencing guidelines were merely advisory, *see United States v. Booker*, 543 U.S. 220, 264-65 (2005), some district courts began correcting for the 100-to-1 disparity by sentencing

---

[2] A brief aside on the distinction between powder cocaine, cocaine base, and crack cocaine might be useful. "Powder cocaine" (cocaine hydrochloride) is a salt that is not easily smoked because it decomposes before vaporizing. But powder can be converted into its more smokeable "base" form, known as "cocaine base" or "freebase cocaine." Because making freebase generally requires the use of an explosive solvent (like ether), many dealers instead use baking soda to make "crack cocaine," which is merely the street name for a type of cocaine base that is less pure but safer and easier to make. *See United States v. Edwards*, 397 F.3d 570, 571 (7th Cir. 2005); Andrew C. Mac Nally, *Comment: A Functionalist Approach to the Definition of "Cocaine Base" in § 841*, 74 U. Chi. L. Rev. 711, 713, 716-21 (2007); Jason A. Gillmer, *Note:* United States v. Clary*: Equal Protection and the Crack Statute*, 45 Am. U.L. Rev. 497, 508-10 (1995).

crack defendants below their guideline range. We concluded, however, that district courts could not issue below-guideline sentences merely because they disagreed with the policy underlying this disparity. *See, e.g.*, *United States v. Miller*, 450 F.3d 270, 275-76 (7th Cir. 2006). The Supreme Court reversed us in *Kimbrough*, concluding that because "the cocaine Guidelines, like all other Guidelines, are advisory only," district courts may consider the crack/powder disparity in fashioning an appropriate sentence that is not "greater than necessary" to serve the objectives of sentencing. *See* 128 S. Ct. at 564 (citing 18 U.S.C. § 3553(a)). We subsequently held that a limited remand and resentencing might be appropriate when a defendant makes, for the first time on appeal, an argument based on *Kimbrough*. *See Taylor*, 520 F.3d at 746-47 (citing *United States v. Paladino*, 401 F.3d 471, 481-84 (7th Cir. 2005)).

Here, Liddell was not sentenced on count one based on U.S.S.G. § 2D1.1 and its 100-to-1 disparity.[3] Instead, he was sentenced based on career offender guideline U.S.S.G. § 4B1.1, which calculates offense levels based on the statutory maximum sentence for the underlying offense. *See United States v. Harris*, No. 07-2195, 2008 WL 3012362, at *12 (7th Cir. Aug. 6, 2008). To illustrate, section

---

[3]  Accordingly, Liddell cannot benefit on count one from recent amendments to section 2D1.1 that retroactively reduced offense levels for certain crack defendants. *See* Supplement to the 2007 Guidelines Manual 1-4 (2008) (U.S.S.G. § 1B1.10); U.S.S.G., Supplement to Appendix C 226-31 (2007) (Amendment 706).

4B1.1 assigns a base offense level of 37 for the crime that Liddell was convicted of—dealing five grams or more of cocaine base—because that offense carries a statutory maximum of life imprisonment (due to his previous conviction for a felony drug offense). *See* 21 U.S.C. § 841(b)(1)(B). If Liddell had instead peddled five grams or more of powder cocaine, section 4B1.1 would have assigned a base offense level of 34. *See id.* § 841(b)(1)(C) (statutory maximum of 30 years for defendants with a prior felony drug conviction). After accounting for the three-level acceptance of responsibility reduction, Liddell faced a career offender guideline range of 262-327 months for his crack conviction; he would have faced a career offender range of 188-235 months had he instead been convicted of dealing an equivalent amount of powder cocaine.

So the differential treatment of crack and powder cocaine certainly affected the guideline range that Liddell faced on count one. But the problem for Liddell is that this disparity did not stem from the guideline itself but from the statutory maximum that the guideline referenced. *Harris*, 2008 WL 3012362, at *12 ("To the extent that a sentencing disparity might occur under § 4B1.1 based upon the type of cocaine involved, it does not result from the now-advisory drug quantity table, but is the product of a discrepancy created by *statute*."). And "[w]hile the sentencing guidelines may be only advisory for district judges, congressional legislation is not." *Id.* So "a sentence entered under the career offender guideline, § 4B1.1, raises no *Kimbrough* problem because to the extent it treats crack cocaine differently from powder

cocaine, the disparity arises from a statute, not from the advisory guidelines." *Id.* at *13; *see also United States v. Harper*, No. 06-2064, 2008 WL 2420867, at *4 (7th Cir. June 17, 2008) (unpublished) ("*Kimbrough* and the revised sentencing guidelines had no effect on [the defendant's] career offender status."). We reaffirm that *Kimbrough*, which only interpreted the "cocaine guidelines," did not change the way courts calculate career offender guideline ranges.

Liddell, however, also makes a more nuanced argument based on *Kimbrough*: while a district court cannot consider the crack/powder disparity in calculating the career offender guideline range, it can consider the disparity as a reason for issuing a below-guideline sentence. Because Liddell did not raise this argument in the district court, our review is for plain error. That requires us to determine whether (1) there was error (2) that was plain and (3) that "affect[s] substantial rights." We must also consider whether to correct the error because it (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *See United States v. Hatten-Lubick*, 525 F.3d 575, 582 (7th Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted)).

We first examine whether there was an "error" here. Whether a court can consider the crack/powder disparity as a reason for issuing a sentence below the career offender guidelines is not a trivial question. To begin, the Sentencing Commission has chosen career offender guideline ranges based on 28 U.S.C. § 994(h), which provides that

"[t]he [Sentencing] Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for an offense committed by a career offender. *See* U.S.S.G. § 4B1.1 (background) (noting that this guideline implements Congress's directive under section 994(h)). So for a crack cocaine offense, section 994(h) directs the Sentencing Commission to peg the career offender guidelines at or near the maximum terms of imprisonment in the federal controlled substances statute, which still retains a crack/powder disparity. *See* 21 U.S.C. § 841(b)(1). This link between the guidelines and the controlled substances statute might seem to suggest that a court is limited in its ability to issue below-guideline sentences to career offenders based solely on the court's belief that the crack/powder disparity is unwarranted. *Cf. United States v. Glover*, 479 F.3d 511, 522 (7th Cir. 2007) ("[T]he career offender rules pose legal rather than factual issues for a sentencing judge, which removes the rules from the reach of *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] and *Booker* altogether."); *United States v. Woodard*, 408 F.3d 396, 399 (7th Cir. 2005) ("*Booker* does not affect § 994(h), which calls for career offenders to be sentenced at or near the statutory maximum.").

But other statutory provisions suggest that the Sentencing Commission has some discretion in formulating guidelines under section 994(h). *See* 28 U.S.C. § 994(a)-(f) (providing Commission with its general guideline promulgation authority); *id.* § 994(o), (p) (providing amendment authority to the Commission). Indeed, the Commission has relied on these provisions to "modify" section 994(h)'s

directive and stay true to a different congressional man-
date—avoiding "unwarranted sentencing disparities
among defendants with similar records who have been
found guilty of similar criminal conduct . . . ." *See* U.S.S.G.
§ 4B1.1(background) (quoting 28 U.S.C. § 991(b)(1)(B)
(internal quotation marks omitted)); *see also id.* ("The
Commission's refinement of this definition [in section
994(h)] over time is consistent with Congress's choice of
a directive to the Commission rather than a mandatory
minimum sentencing statute." (citing S. Rep. No. 225,
98th Cong., 1st Sess. 175 (1983)). So the tether that sec-
tion 994(h) creates between the career offender guide-
lines and statutory maximums is not as tight as it might
seem at first glance.

Moreover, section 994(h) only addresses what the
Sentencing Commission must do; it doesn't require *sen-
tencing courts* to impose sentences "at or near" the statutory
maximums. *Kimbrough* itself suggested that section 994(h)'s
directive targeted the Commission, not the sentencing
courts, when it referred to section 994(h) as an example
of Congress "direct[ing] sentencing practices in express
terms" when it wants to do so. *Kimbrough*, 128 S. Ct. at 571
("For example, Congress has specifically required the
*Sentencing Commission* to set Guidelines sentences for
serious recidivist offenders 'at or near' the statutory
maximum. 28 U.S.C. § 994(h)." (emphasis added)). As
the Second Circuit recently held post-*Kimbrough*:

> Section 994(h) . . . by its terms, is a direction to the
> Sentencing Commission, not to the courts, and it
> finds no express analog in Title 18 or Title 21.

> While 21 U.S.C. § 841(b) expressly establishes the minimum and maximum prison terms that the court is allowed to impose for violations of § 841(a), there is no statutory provision instructing the court to sentence a career offender at or near the statutory maximum. And while the sentencing statute expressly directs the district court to "consider" the "sentencing range established for . . . the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4)(A), it does not instruct the court to impose such a sentence.

*United States v. Sanchez*, 517 F.3d 651, 663 (2d Cir. 2008); *see id.* at 665 (section 994(h) would not prohibit a district court from issuing a below-guideline sentence for a crack defendant); *see also United States v. Martin*, 520 F.3d 87, 96 (1st Cir. 2008) (rejecting the government's argument, based on section 994(h), that the district court erred by awarding a below-guideline sentence to a crack career offender); *id.* ("The Supreme Court's recent decision in *Kimbrough* opened the door for a sentencing court to deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission." (citation omitted)). Additionally, in another post-*Kimbrough* case, the government emphasized that a district court can sentence below the career offender guidelines if the court disagrees with the policy underlying the crack/powder disparity. *See* Gov. Supp. Memo. at 12-17, *United States v. Harris*, No. 07-2195 (7th Cir. May 6, 2008).

Most importantly, since *Booker*, the Supreme Court has consistently reaffirmed that *all* of the sentencing guidelines are advisory. *See, e.g.*, *Kimbrough*, 128 S. Ct. at 564 ("[T]he cocaine Guidelines, like all other Guidelines, are advisory only . . . "); *id.* at 577 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."); *Gall v. United States*, 128 S. Ct. 586, 594 (2007) ("[T]he Guidelines are now advisory . . . ."); *Rita v. United States*, 127 S. Ct. 2456, 2474 (2007) (Stevens, J., concurring) ("I trust that those judges who had treated the Guidelines as virtually mandatory during the post-*Booker* interregnum will now recognize that the Guidelines are truly advisory."). We have clearly held that this includes the career offender guidelines. *See Harris*, 2008 WL 3012362, at *12 ("[O]ur discussion should not be read to suggest that § 4B1.1 is any less advisory for a district judge than the other sentencing guidelines."). And we have already indicated post-*Kimbrough* that courts can consider the crack/powder disparity when resentencing defendants who are career offenders. *See Harper*, 2008 WL 2420867, at *4 (rejecting the government's argument that a remand in light of *Kimbrough* was unnecessary because the district court had "imposed a below-guidelines sentence that happens to fall *within* the guidelines range he would have received as a career offender").

However, none of this helps this particular defendant because any error here wasn't "plain." *See Olano*, 507 U.S. at 734 (plain is synonymous with "clear" or "obvious"). *Kimbrough* itself didn't deal with the career offender

context and as evident from the discussion above, it was not clear before this decision that *Kimbrough*'s rationale extends to that context. It would be inappropriate to find plain error given that the law has been unsettled, *see United States v. Stott*, 245 F.3d 890, 900 (7th Cir. 2001), and so we find that any error here was not plain. Neither *Kimbrough* nor any extension of it requires us to remand this case for resentencing on count one.

### C.    The district court's sentence was reasonable.

Liddell also claims that his sentence of 240 months' imprisonment is unreasonable, even though it was 22 months below the career offender guideline range of 262-327 months. He reasons that because his prison term doubled upon resentencing, the district court put too much emphasis on the new guideline range in arriving at the new sentence.

When calculating a sentence, a district court first calculates the proper range under the sentencing guidelines. It then considers that guideline range in addition to any of the other relevant sentencing factors under 18 U.S.C. § 3553(a) before arriving at the appropriate sentence. *See United States v. Dean*, 414 F.3d 725, 728-30 (7th Cir. 2005). As we discussed above, the court properly determined that Liddell was a career offender and correctly arrived at a sentencing range of 262-327 months. So the sole question for us to decide is whether the below-guideline sentence that Liddell received was reasonable.

A sentence within a properly calculated guideline range is presumptively reasonable, so it follows that a

below-guideline sentence is also presumptively reasonable against an attack by a defendant claiming that the sentence is too high. *See Rita*, 127 S. Ct. at 2462-63; *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Liddell has not come close to rebutting that presumption here. *See United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high."). Although Liddell's 240 month sentence is double what it was previously, the fact remains that on both occasions the district court sentenced him leniently—first at the mandatory statutory minimum and then well below the applicable guideline range. And as the government notes, there is little evidence that the court put too much weight on the guidelines given that Liddell received a below-guideline sentence. Perhaps things would have been different if the court had resentenced Liddell near the top of the new guideline range, but that is a matter for another day and another case.

## III. CONCLUSION

We AFFIRM the district court's judgment on count one. We issue a LIMITED REMAND on count two for proceedings consistent with our opinion in *Taylor*, 520 F.3d at 748-49.