In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2916

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SYLVESTER PURHAM,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 12-cr-30019 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 25, 2014 — DECIDED JUNE 9, 2014

Before KANNE and ROVNER, *Circuit Judges*, and DOW, *District Judge.*[*]

KANNE, *Circuit Judge.* Sylvester Purham ran a crack cocaine distribution ring in Quincy, Illinois. With the help of his brother, Howard, he continued to manage the conspiracy while incarcerated following a felon-in-possession conviction. Purham talked to Howard using the prison telephones, giving

---

[*] Of the Northern District of Illinois, sitting by designation.

him advice on how to manage the conspiracy and avoid detection by the police.

Based in part on the brothers' recorded phone calls, federal agents charged both with conspiring to distribute crack cocaine. Purham pled guilty and was sentenced to 360 months' imprisonment. He now appeals his sentence. Because we find that the district court clearly erred in including certain prior conduct as relevant conduct, we reverse in part and remand for resentencing.

## I. BACKGROUND

Sylvester Purham moved to Quincy, Illinois in 2006. Later that year, Illinois authorities arrested him for cocaine possession. The state court convicted him and sentenced him to 30 months of probation. While on probation, Purham continued to distribute crack cocaine. For instance, in 2008, he and Robert Moman transported more than a kilogram of crack cocaine from Chicago to Quincy for resale.

Purham's probation for the 2006 offense was revoked in July 2008, after Purham admitted that he had violated the terms of his probation by not reporting for substance abuse testing and counseling as well as failing to inform the probation department of his whereabouts. He was incarcerated in August 2008 and remained in Illinois custody until May 10, 2010.

After being released from state custody, Purham resumed selling crack cocaine. As a member of the Black P Stone Nation street gang, he worked with other members of the organization to distribute the drug. His brother, Howard, who was also a

Black P Stone, had recently moved to Quincy and joined the distribution effort. The group brought crack cocaine to Quincy from Chicago for resale using buses, Amtrak, and private vehicles. They also rented "trap houses" to store and sell the drugs.

In August 2010, law enforcement seized 55 grams of crack cocaine from Gabrielle Eagle, Howard's girlfriend. Eagle had brought the crack cocaine to Quincy at Purham's direction. The authorities arrested Eagle as well as Racaia Lewis, who was casually dating Purham. Lewis gave the officers permission to search her apartment, in which they found more crack cocaine and a firearm that belonged to Purham.

On August 28, 2010, Purham was arrested for unlawful possession of a firearm and was sentenced to three years in state prison. While in prison, Purham spoke frequently with Howard by phone, advising him on how to continue selling crack cocaine in his absence. They discussed how to maintain the operation, avoid detection by law enforcement, discipline Black P Stones who seemed likely to cooperate with government investigations, and the merits of expanding into heroin distribution. Purham also had a portion of the drug proceeds sent to him in prison. Per prison policy, all of the phone conversations were recorded.

Using the recorded conversations as well as other information gathered during a lengthy criminal investigation, officers arrested nine co-conspirators and arranged for Purham's transfer from state to federal custody. Purham and Howard were eventually charged with conspiracy to distribute at least 280 grams of crack cocaine. The charged conduct stretched

from July 2010 (shortly after Purham was released from state custody) to November 2011 (while Purham was serving a prison term that began in August 2010). Purham pled guilty to the charge without a plea agreement and the case proceeded to sentencing.

Purham's Presentence Investigation Report ("PSR") recommended a base offense level of 34, based on an "extremely conservative estimate" that Purham was responsible for 1.9 kilograms of crack cocaine. This amount comprised approximately 1.8 kilograms transported to Quincy in 2008, before Sylvester Purham was incarcerated for violating his probation, and approximately 190 grams the brothers had transported while Sylvester was serving his three-year sentence for unlawfully possessing a firearm. The PSR further recommended a number of sentencing enhancements: two levels for possessing a firearm during the offense, two levels for making threats of violence, two levels for using trap houses to distribute the crack cocaine, four levels for playing a leadership role in the offense and two levels for using a minor to commit the crime. It also recommended a three-level reduction for acceptance of responsibility, leaving Purham at a total offense level of 43.

At sentencing, Purham filed a series of objections to the PSR, notably arguing that the PSR inappropriately included the drugs transported in 2008 as relevant conduct and that the four-level enhancement for his role in the conspiracy did not apply. To bolster the assertions in the PSR, the government called members of the Quincy Police Department as well as several co-conspirators to testify about the details of the conspiracy. Their testimony established that Purham was a

member of the Black P Stone Nation and described a number of occasions on which people brought drugs to Quincy at the direction of one of the Purhams. It did not describe the drugs Sylvester Purham transported in 2008.

The district court rejected these objections to the PSR. With regard to the 2008 drug quantities, the court credited the testimony of cooperating sources and found that the activity was relevant conduct covered by U.S.S.G. § 1B1.3(a)(1)(A). The district court also found that Purham was not a "minimal participant" but that he was running the drug operation and giving direction. Purham now appeals.

## II. ANALYSIS

Purham argues that the district court erred in two ways. First, he contends that the court inappropriately included drug conduct from 2008 as relevant conduct when calculating his sentence. Second, he asserts that the court should have applied, at most, the three-level role-in-the-offense enhancement rather than the four-level enhancement it used. We address each argument in turn.

### A. Relevant Conduct

Purham challenges the district court's inclusion of his 2008 drug activity in the drug quantities used to calculate his base offense level under the Guidelines. When making a relevant conduct determination in a drug distribution case, the district court must make two findings: first, whether the uncharged conduct was sufficiently related to the offense of conviction; and second, what drug quantity was involved in the uncharged actions. *United States v. Acosta*, 85 F.3d 275, 279 (7th

Cir. 1996). We review both of these findings for clear error. *Id.* Purham challenges only the first of these findings—that the conduct was sufficiently related to the offense for which he was convicted.

When calculating an offender's base offense level, the district court takes into account all acts and omissions that were a part of the same course of conduct or a common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). "Same course of conduct" and "common scheme or plan" are close cousins, but not identical. Two offenses are part of the same course of conduct where they are "connected or sufficiently related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n. 9(B). They are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n. 9(A).

The 2008 conduct was not part of the same course of conduct as the 2010 drug conspiracy to which Purham pled guilty. To determine whether two acts are part of the same course of conduct, we look for "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated … significant similarity, regularity, and temporal proximity." *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998). The government did not make the required demonstration here. A gap longer than a year stretches between the purportedly relevant conduct, which occurred before Purham went to jail in August 2008, and the offense of conviction, which began in July 2010.

Where a temporal gap like this exists, we require "a stronger showing regarding the other course of conduct factors, such as regularity and similarity of acts." *United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005). The PSR and the testimony at sentencing did not include sufficient information to support such a showing. In 2008, Purham did transport crack cocaine from Chicago to Quincy. But that is the only similarity we can discern between the 2008 and 2010 conduct. The 2008 transactions generally involved much larger amounts of cocaine than the 2010 transactions. And although the PSR makes clear that the Purhams used Amtrak during the charged offense, there are no details about the mode of transit used for the 2008 conduct. Testimony at Purham's sentencing hearing did not expand upon the meager PSR details.

Neither was the 2008 conduct part of a "common scheme or plan" that included the convicted offenses. Two or more offenses are part of a common scheme or plan if they include at least one common factor, such as "common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3(a)(2). The government urges us to find that because the 2008 conduct and the 2010 conduct both involved members of the Black P Stone Nation, there are common accomplices and thus a common scheme or plan. But the men with whom Purham worked to transport the cocaine, Robert Moman and Robert Miller, are not identified as Black P Stones. Neither were they involved in the charged conduct. As noted above, the PSR and the testimony at sentencing did not provide enough information to conclude that the two periods of cocaine running shared a modus operandi. And as this is a drug crime, there are no identifiable victims.

Thus, we can only find that Purham's 2008 activity was part of the same course of conduct as the crime of conviction if it shared a purpose with the 2010 activity. Of course, on some level, we can—both periods of activity had as their ultimate goal supplying cocaine to the people of Quincy, Illinois. But were we to find a common purpose in this case, we would undercut our warning that "[t]he mere fact that the defendant has engaged in other drug transactions is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes." *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996); *see also Bacallao*, 149 F.3d at 720–21 (finding link between drug transactions insufficient where defendant worked with different accomplices, there was no evidence of a unifying modus operandi, and transactions occurred six or seven months apart). Supplying cocaine to the residents of an individual city on two separate occasions, unlinked by common accomplices or a common modus operandi, does not link the two instances as "relevant conduct" under U.S.S.G. § 1B1.3(a).

We note that the government may well have the necessary evidence at its disposal to establish a link between Purham's 2008 drug transportation and the later distribution activity. The government is free to present this evidence at resentencing, if it does in fact possess it. But on the record as it stands, we can only conclude that the court below clearly erred in including the 2008 drug quantities as relevant conduct.

*B. Leadership Enhancement*

Purham also challenges the district court's decision to apply a four-level enhancement for acting as an "organizer or leader"

of the conspiracy. We review this decision for clear error. *United States v. Longstreet*, 567 F.3d 911, 925 (7th Cir. 2009).

The Guidelines provide several sentencing enhancements that apply to defendants who played an aggravated role in their offense. Two are relevant to Purham's case: the four-level enhancement for acting as the "organizer or leader of a criminal activity" and the three-level enhancement that applies to a "manager or supervisor." U.S.S.G. § 3B1.1. Both enhancements only apply where the charged activity "involved five or more participants or was otherwise extensive." *Id.* Purham does not dispute that the Quincy cocaine conspiracy involved five or more people, so we will focus on the district court's determination that he was an "organizer or leader."

Purham argues that the evidence supports, at most, the lesser enhancement for acting as a manager or supervisor. In particular, he contends that his brother Howard was the real leader. To distinguish between a leader and a mere manager, the Guidelines instruct a court to consider a mishmash of factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n. 4. Although Purham was incarcerated during the majority of the conspiracy, he continued to exercise decision-making authority, directing his brother Howard on

points of strategy and discipline. The prison phone system recorded Purham telling Howard how much cocaine to purchase at a time for resale in Quincy, Howard relating the details of the operation for Purham's approval, and Purham asking Howard to send him some of the proceeds of the conspiracy. Purham also told Howard to "beat [Sydney Reed's] little ass" when he suspected Reed had talked to law enforcement authorities. Purham also recruited members of the conspiracy.[1] With all this evidence before it, we cannot say the district court clearly erred in finding that Purham led the conspiracy while Howard conducted the day-to-day operations.

### III. CONCLUSION

The district court clearly erred in characterizing the 2008 drug transactions as relevant conduct based on the record before it. The court did not, however, commit clear error in applying the leader/organizer enhancement when sentencing Purham. Accordingly, we REVERSE the district court's judgment sentencing Purham and REMAND for resentencing.

---

[1] Purham argues that this factor cannot count against him, as the district court denied the application of a two-level enhancement for recruiting a minor to the conspiracy. But that ignores the statements in the PSR about Purham's recruitment of another Purham brother, Jeremy.