NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 9, 2014
Decided August 14, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1560

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:13-cr-30169 |
| DIONE J. JOYCE, *Defendant-Appellant.* | Michael J. Reagan, *Judge*. |

**O R D E R**

Dione Joyce appeals his 60-month sentence for selling cocaine to a government informant on the ground that the district court improperly adjusted his guidelines offense level upward after finding that he possessed a firearm in connection with other drug dealing. Because the district court's relevant-conduct finding was not clearly erroneous, we affirm.

A confidential informant told agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives that a "Don Julio" (later identified as Joyce) was selling

cocaine in East St. Louis, Illinois. The informant said that Joyce usually sold powder cocaine but could also get crack. At the direction of ATF agents, the informant bought cocaine from Joyce on four occasions in the same parking lot; in total, the informant bought over 100 grams of crack and about 25 grams of powder cocaine.

Armed with a warrant, ATF agents went to Joyce's home to arrest him. Joyce's girlfriend told the agents that Joyce had a gun, which Joyce confirmed and then led the agents to a stolen pistol. Agents also found a digital scale with powder-cocaine residue on it and a package with white powder that looked like the drug (but was not). At the time Joyce admitted selling powder cocaine and marijuana but denied selling crack.

Joyce later pleaded guilty to three counts of distributing crack cocaine. *See* 21 U.S.C. § 841(a)(1). Based on the amount of cocaine Joyce sold to the informant, the probation officer calculated a guidelines base offense level of 26. The probation officer concluded that Joyce's relevant conduct included distributing cocaine from the first controlled buy up to his arrest with the digital scale, and increased Joyce's offense level by 2 for possessing the pistol. U.S.S.G. §§ 1B1.3, 2D1.1(b)(1). Subtracting 3 levels for acceptance of responsibility led to a total offense level of 25, which, along with a criminal-history category of I, yielded a guidelines imprisonment range of 57 to 71 months, raised to 60 to 71 months by the five-year statutory minimum for Joyce's distribution offense, 21 U.S.C. § 841(b)(1)(B).

Joyce objected to the upward adjustment for possessing a firearm, asserting that the pistol was not related to his cocaine-distribution offense. In support, he pointed out that he did not bring the gun to the controlled buys and agents did not discover it until seven weeks later and, even then, under the pillow on his bed, not near the scale or on his person. Joyce said he kept the gun for personal safety because of his dangerous neighborhood. And the scale in his home might have been used to weigh cocaine for personal use, he suggested. Even if his offense level were increased by 2 for possessing a firearm, Joyce maintained, his lack of a criminal history still rendered him eligible for a so-called safety-valve reduction below the statutory minimum because he did not possess the firearm "in connection with" his drug offense. *See* 18 U.S.C. § 3553(f)(2).

The district court rejected Joyce's arguments and adopted the probation officer's report. The court found that the pistol was connected with Joyce's cocaine-dealing offense because it was present at Joyce's home with the scale and cocaine residue. The notion that Joyce used the scale to measure amounts of cocaine for his personal use was, the court said, "far-fetched." The court ultimately sentenced Joyce to 60 months'

imprisonment (the statutory minimum), but explained that it would have imposed a shorter term under the safety-valve provision if Joyce had not possessed the firearm in connection with his drug crime.

On appeal Joyce concedes that there is sufficient evidence to conclude that he weighed cocaine at his home that he later sold (the scale and his admission that he dealt the drug) and does not challenge the district court's finding that the gun was possessed in connection with that drug activity. Instead, he hangs his appeal on the contention that that drug activity is not relevant conduct for his conviction for selling crack to the informant. Quoting the relevant-conduct guideline, Joyce maintains that the controlled buys and later dealing are not "sufficiently connected" because they are not similar and are separated in time. U.S.S.G. § 1B1.3 cmt. n.9(A)–(B). To overturn the district court's factual findings and relevant-conduct determination on appeal, Joyce must demonstrate clear error. *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008); *United States v. Delatorre*, 406 F.3d 863, 866 (7th Cir. 2005).

Joyce maintains that the fact that he engaged in other drug transactions does not automatically make them relevant conduct for his crack-distribution offense and that the "sale of cocaine for profit" is not a common purpose sufficient to unify the cocaine sales. Joyce's first point is well taken, as far as it goes, but the very case Joyce cites for both propositions, *United States v. Crockett*, 82 F.3d 722 (7th Cir. 1996), concluded that "cocaine sales" constituted a common purpose supporting a relevant-conduct finding. *Id.* at 730; *see also United States v. Panaigua-Verdugo*, 537 F.3d 722, 727 (7th Cir. 2008) ("sale of increasingly larger quantities of methamphetamine" was common purpose); *United States v. Zehm*, 217 F.3d 506, 512 (7th Cir. 2000) ("maintenance of a high-volume drug distributorship" was common purpose).

Joyce also asserts that the seven-week gap between the last controlled buy and the discovery of the scale in his home belies any connection. But this interval is relatively modest and can perhaps be explained by the ATF no longer directing the informant to buy from Joyce. *See United States v. Singleton*, 548 F.3d 589, 592 (7th Cir. 2008) (two-to-four-month gap explained by buyer's arrest); *United States v. Sumner*, 325 F.3d 884, 891 (7th Cir. 2003) (year-long-gap explained by supplier's arrest); *United States v. Cedano-Rojas*, 999 F.2d 1175, 1177–78, 1181 (7th Cir. 1993) (two-year gap explained by seller's difficulty obtaining new supplier); *United States v. Nunez*, 958 F.2d 196, 198 (7th Cir. 1992) (two-year gap explained by buyer's arrest).

Joyce makes much of the fact that the controlled buys took place in a parking lot, whereas the scale with cocaine residue was found at his home. Acknowledging that his home and the parking lot are both in East St. Louis, he points to language from a recent decision of ours, *United States v. Purham*, 754 F.3d 411 (7th Cir. 2014): "Supplying cocaine to the residents of an individual city on two separate occasions, unlinked by common accomplices or a common modus operandi, does not link the two instances as 'relevant conduct' under U.S.S.G. § 1B1.3(a)." *Id.* at 415. But we also noted in *Purham* that the cocaine deals in that case came two years apart, which necessitated a "stronger showing" of similarity. *Id.* at 414. Indeed, we have often held that relevant conduct can encompass drug dealing in the same city. *See United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009) (Evanston); *Singleton*, 548 F.3d at 593 (Alton); *United States v. White*, 519 F.3d 342, 348–49 (7th Cir. 2008) (Decatur); *United States v. Wilson*, 502 F.3d 718, 724 (7th Cir. 2007) (St. Louis); *Cedano-Rojas*, 999 F.2d at 1181 (Chicago).

Finally, Joyce points out that the controlled purchases involved crack, but the residue found at his home was from powder cocaine. But this difference in the form of the drug is not significant in and of itself. *See White*, 519 F.3d at 349; *Sumner*, 325 F.3d at 890. At all events, the informant reported that Joyce sold both crack and powder cocaine, and Joyce admitted to ATF agents that he sold powder cocaine. *See United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003) (post-arrest admission of drug dealing, though later recanted, supported relevant-conduct finding); *Sumner*, 325 F.3d at 890–91 (same).

In the end, the district court reasonably found that the residue-covered scale was connected to Joyce's cocaine sales to the informant and, given Joyce's tacit acknowledgment that the gun was connected to the scale, the court did not clearly err in imposing the statutory-minimum sentence. Accordingly, we **AFFIRM** Joyce's sentence.