**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sylvester PURHAM, Defendant–Appellant.**

**No. 14–3424.**

United States Court of Appeals, Seventh Circuit.

Submitted June 2, 2015.*

Decided Aug. 5, 2015.

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* Fed. R.App. P. 34(a)(2)(C).

Jason M. Bohm, Attorney, Office of the United States Attorney, Urbana, IL, for Plaintiff–Appellee.

Kent R. Carlson, Attorney, Carlson & Associates, Chicago, IL, for Defendant–Appellant.

Before KANNE, ROVNER, Circuit Judges and DOW, District Judge.**

KANNE, Circuit Judge.

Sylvester Purham appeals his sentence for conspiracy to distribute 280 grams or more of crack cocaine. He raises three challenges to his sentence. First, he argues that the district court exceeded the scope of our remand order when it recalculated his base offense level. Second, he argues that his prison sentence of 324 months is unreasonable. And third, he argues that the district court erred in imposing two special conditions of supervised release: (1) prohibiting him from associating with any member of any street gang and wearing or carrying on his person any sign, symbol, or paraphernalia associated with gang activity; and (2) requiring him to perform 20 hours of community service per week at the direction of the Probation Office if he is unemployed for a period of 60 days.

## I. BACKGROUND

On June 4, 2012, Purham pled guilty to conspiracy to distribute 280 grams or more of crack cocaine. 21 U.S.C. §§ 841, 846. During the plea hearing, Purham agreed

** Of the Northern District of Illinois, sitting by    designation.

that "the weight of the drug involved in the conspiracy was 280 grams or more." He further agreed that he faced a 20–year mandatory minimum sentence. After the hearing, Purham developed second thoughts. He says he learned—for the first time—that he could not argue a different drug-quantity amount at sentencing. He discussed this inability to challenge the drug amount with his attorney and the probation officer. He then sent multiple letters to the district court attempting to withdraw his guilty plea. The district court held a hearing, and then denied Purham's request.

The court sentenced Purham to imprisonment for 360 months, supervised release for 10 years, and a $100 special assessment. Purham appealed that sentence. We affirmed in part and reversed in part. *See generally United States v. Purham,* 754 F.3d 411 (7th Cir.2014) (reversing the district court's imposition of a sentencing enhancement and remanded for resentencing). Specifically, we held that the district court clearly erred in counting Purham's 2008 drug transactions as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2). *Purham,* 754 F.3d at 414–16 ("The 2008 conduct was not part of the same course of conduct as the 2010 drug conspiracy to which Purham pled guilty.... Neither was the 2008 conduct part of a 'common scheme or plan' that included the convicted offenses."). Because we were unwilling to completely shut the door on this enhancement, we issued guidance for resentencing "[T]he government may well have the necessary evidence at its disposal to establish a link between Purham's 2008 drug transportation and the later distribution activity. The government is free to present this evidence at resentencing, if it does in fact possess it." *Id.* at 415.

The government declined our invitation. So consistently with our decision, the dis-trict court did not count Purham's 2008 drug activity as relevant conduct under § 1B1.3(a)(2). In recalculating the period of incarceration, the court started with a base offense level of 32 for at least 280 grams but less than 840 grams of crack cocaine. The court then added some levels and subtracted some levels. It *added:* two levels because Purham had a coconspirator purchase a firearm for him, § 2D1.1(b)(1); two levels because members of the conspiracy made threats against two cooperating witnesses, § 2D.2(b)(2); two levels because he employed multiple residences for the sole purpose of distributing crack cocaine, § 2D1.1(b)(12); and four levels because Purham acted as the manager of the conspiracy, § 3B1.1(a). It then *subtracted* two levels due to the "Drugs Minus Two" amendment,[1] which lowered his base offense level for 280 grams of crack cocaine. Purham's criminal history score of 15 points placed him in Category VI. Based on his total offense level of 42, Purham's guidelines range was set at 360 months to life in prison.

The district court then noted the sentencing disparity between crack cocaine and powder cocaine. This disparity, the court observed, "fosters disrespect for and mistrust in the criminal system because of its disproportionate impact on African–American defendants." (Sent. Tr. 29.) Trying to remedy this problem, while at the same time accounting for the seriousness of the offense, the district court sentenced Purham to imprisonment for 324 months (a 36–month discount from his previous sentence), supervised release for 120 months, and a $100 special assessment.

The district court also imposed special conditions of supervised release, two of which Purham challenges on appeal. One condition concerns gang association and

---

**1.** The formal name for this amendment is      Amendment 782.

the other condition concerns community service. Regarding gang association, the district court ordered Purham to "not associate with any member of any street gang." The court's order continued: "You shall not wear or carry on your person colors or any sign, symbol, or paraphernalia associated with gang activity. Only gang tattoos received prior to incarceration are not considered a violation of this condition." The government quickly sought clarification:

> [Government]: Your Honor said he should not possess or wear any gang colors. You don't mean obviously that he can't wear red if that's associated; they have to be intended to be a gang color as opposed to just that color?
>
> The Court: Yes.
>
> [Government]: Just to make the record clear on that.
>
> The Court: Yes. Any questions?
>
> [Defense Attorney]: No, Your Honor.

(Sent. Tr. 40.)

Regarding community service, the district court ordered: "If you're unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or layoff from employment, you shall perform at least 20 hours of community service work per week at the direction of Probation until gainfully employed." (Sent. Tr. 37.) On October 31, 2014, the same day of the resentencing, Purham filed a notice of appeal.

## II. ANALYSIS

■ We review a district court's determination of the scope of remand *de novo*. *United States v. Husband*, 312 F.3d 247, 251 (7th Cir.2002). The reasonableness of a sentence is reviewed for an abuse of discretion. *United States v. Turner*,

569 F.3d 637, 640 (7th Cir.2009). Factual findings are reviewed for clear error. *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir.2013).

Our analysis begins with whether the district court acted within the scope of our remand order.

### A. The Remand Order

■ According to Purham, the district court "ignore[d]" the "limited nature" of our remand order when it made a fresh, drug-quantity determination at resentencing. (Appellant's Br. 22–23.) The district court did no such thing. After ruling that it would not consider as relevant conduct the 1.8 kilograms of crack cocaine that it erroneously considered at the original sentencing, the district needed to recalculate the drug-quantity amount to determine Purham's base offense level under § 2D1.1(c). It chose the obvious number—280 grams—which is the amount Purham pled guilty to conspiring to distribute.[2] "If this Court remands to correct a discrete, particular error that can be corrected ... *without ... a redetermination of other issues,* the district court is limited to correcting that error." *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir.2011) (emphasis added) (internal quotations and citations omitted). Because exclusion of the 1.8 kilograms of crack cocaine as relevant conduct compelled a fresh look at Purham's drug-quantity amount, the district court could not resentence Purham without a redetermination of this other, critical issue. It follows that the district court did not exceed our remand order. Purham's arguments to the contrary are without merit.

---

2. In agreeing that he conspired to distribute 280 grams or more of crack cocaine, Purham relieved the government of its burden of proof at sentencing. *Cf. United States v. Redmond*, 667 F.3d 863, 875 (7th Cir.2012) ("The government must prove the quantity of drugs for sentencing purposes by a preponderance of the evidence.").

## B. The Reasonableness of the Sentence

Purham next challenges the reasonableness of his sentence. He finds fault in the district court's calculation of the base offense level and in its application of the sentencing factors found in 18 U.S.C. § 3553(a). He also characterizes a prison term of 324 months as greater than necessary to meet the goals of § 3553(a). We disagree.

■ A below-guidelines sentence is "presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir.2008). Indeed, "[i]t is hard to conceive of below-range sentences that would be unreasonably high." *United States v. George*, 403 F.3d 470, 473 (7th Cir.2005).

■ After calculating a guidelines range of 360 months to life, the district court granted a downward variance to remedy the crack/powder disparity in the guidelines. After accounting for the mandatory minimum sentence and the seriousness of the offense, the district court then sentenced Purham to 324 months—still well below the initial guidelines range of 360 months to life. Purham advances no basis to rebut the presumption that this below-range sentence is reasonable.

We already disposed of Purham's argument regarding the power of the court to recalculate his drug-quantity amount. Purham cannot seriously question that he conspired to distribute 280 grams; he pled guilty to that amount. As for his claim that the district court misapplied the § 3553(a) factors, the record belies it:

> Mr. Purham, your PSR indicates you've made self-destructive choices from an early age. Not only have you been convicted of other drug trafficking offenses in the past, you orchestrated the drug trafficking conspiracy for which you're being sentenced today while you were imprisoned by the State of Illinois.

> You've threatened witnesses against you with violence and the conduct is unacceptable and you must be punished for it.

> What is more, dealing drugs is illegal and carries with it the overhanging threat of violence and social decay. That threat is evident by the way you've conducted yourself. Your long history of drug offenses shows that you've made a habit of disregarding the law. And justice requires that your sentence reflect those social ills and serve as a deterrent to others.

(Sent. Tr. 27.)

Following its discussion of the crack/powder disparity, the district court noted Purham's redeeming qualities. "[Y]ou have performed well in Bureau of Prisons. You've gone to the Challenge Program, the GED course work, parenting class. You've held positions in the food service and you've had no disciplinary infractions." (Sent. Tr. 29.)

The district court's thoughtful and thorough explanation of its sentence is tailored to Purham and is wholly consistent with the § 3553(a) factors. The sentence is anything but unreasonable.

## C. The Conditions of Supervised Release

■ We now turn to Purham's final issue on appeal—whether the district court erred in imposing the gang-association and community-service conditions of supervised release. The government argues that Purham waived any challenge to these conditions by not objecting to them in his first appeal. We disagree. After his first appeal, we decided *United States v. Thompson*, 777 F.3d 368 (7th Cir.2015). That case vacated a number of conditions of supervised release after finding them to be fatally vague. *Id.* Two such conditions are present in substantially similar form

here. We will not apply waiver under these circumstances. *Cf. United States v. Adkins*, 743 F.3d 176, 193 (7th Cir.2014) ("[D]espite a waiver of appellate review, the Due Process Clause permits review when a special condition is so vague that no reasonable person could know what conduct is permitted and what is prohibited.").

■ Further, immediately after the district court imposed its sentence on remand, Purham stated, "I would like to appeal." (Sent. Tr. 39.) Although Purham did not object to a *specific* condition of supervised release at the time of sentencing, we construe this statement as a *general* objection to his entire sentence, which includes the court's conditions of supervised release. Accordingly, we review the court's conditions for an abuse of discretion. *United States v. Baker*, 755 F.3d 515, 523 (7th Cir.2014) (citing *United States v. Neal*, 662 F.3d 936, 938 (7th Cir.2011)).

Purham argues that the gang-association and community-service conditions must be vacated because the district court did not explain how the conditions comport with the sentencing factors listed in § 3553(a). He also argues that the conditions are vague and overbroad, and therefore must be vacated. In advancing these arguments, Purham relies almost exclusively on *United States v. Siegel*, 753 F.3d 705 (7th Cir.2014) and *Thompson, supra.* Before addressing the substance of these conditions, we highlight the district court's reasoning in issuing them. Its approach in this regard provides a model for other courts to follow.

Regarding the challenged community-service condition, we believe the district court linked the disputed requirement to a job-training requirement. We therefore read the conditions—and the reasons supporting them—in tandem.

You shall participate in a program of job training or employment counseling as directed by Probation. I'm imposing that because of the sparse history of legal employment. The employment record and the felony conviction you'll have when you're released, in addition to past felony convictions, are [going to] make it difficult for you to secure employment when you complete your term. So I believe job training and employment counseling will help you find a job. If you're unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or layoff from employment, you shall perform at least 20 hours of community service work per week at the direction of Probation until gainfully employed. Again, I'm once again imposing this because I hope it will help you obtain gainful employment. And it will give you some work skills and help you make contacts with the community to find a job.

(Sent. Tr. 36–37.)

These reasons are consistent with the sentencing factors of § 3553(a), including providing Purham with educational or vocational training and addressing his history and characteristics. 18 U.S.C. § 3553(a)(1), (a)(2)(D). The law does not require a district court to apply the § 3553(a) factors in checklist form. *United States v. Jones*, 774 F.3d 399, 404 (7th Cir.2014). Further, in *United States v. Bryant*, 754 F.3d 443, 444–45 (7th Cir. 2014), we clarified our holding in *Siegel.* We stated that "a district judge is required to give *a reason, consistent* with the sentencing factors in section 3553(a), for every discretionary part of the sentence[,]" including special conditions of supervised release. *Bryant*, 754 F.3d at 444–45 (emphasis added). "[A] reason," we emphasize, is not a laundry list. And "consistent with" does not require mathe-

matical precision. The district court met its statutory requirement under § 3553(a).

The district court's explanation for its condition regarding gang association also passes muster:

You shall not associate with any member of any street gang. You shall not wear or carry on your person colors or any sign, symbol, or paraphernalia associated with gang activity. Only gang tattoos received prior to incarceration are not considered a violation of this condition.

And I'm imposing that because you were a member of the Black P Stone street gang. Cutting ties with the group would be a major step toward marking yourself a law-abiding member of society when you're released.

(Sent. Tr. 38.)

As before, these reasons are consistent with the sentencing factors of § 3553(a). The district court addressed the history and characteristics of Purham. 18 U.S.C. § 3553(a)(1). In denying him the ability to associate with members of street gangs, the district court promoted respect for the rule of law. *Id.* at § 3553(a)(2)(A). The district court also sought to deter Purham from committing future crimes, thereby protecting the public from further crimes. *Id.* at § 3553(a)(2)(B)-(C). We commend the district court for its deliberate approach to issuing conditions of supervised release.

▪ Nevertheless, we must vacate the conditions under *Thompson*.[3] Regarding the community-service condition, the district court in *Thompson* imposed the same condition. 777 F.3d at 381. We vacated it for a couple of reasons. First, the district court set "no limit on the amount of community service that the defendant could be ordered to do." *Id.* And second, the district court did not mention the application

note to U.S.S.G. § 5F1.3, which proscribes community service in excess of 400 hours. Because these deficiencies are also present here, our case law demands the condition be vacated.

The same is true for the gang-association condition. In *Thompson*, the district court forbade the defendant from "associat[ing] with any person convicted of a felony, unless granted permission to do so by the probation officer." *Thompson*, 777 F.3d at 377. We found the condition "fatally vague," noting that because it failed to include a scienter requirement it "appear[ed] to impose strict liability." *Id.* We also questioned the clarity of the term association—"Is a single meeting enough, or is the word intended to denote friendship, acquaintanceship, or frequent meetings?" *Id.*

▪ Here, the district court's condition prohibits street-gang association rather than felony association, but that is a distinction without a difference. Although the district court required an intent element for wearing gang-related colors (i.e., Purham must intend to wear them as a representation of a gang in order to offend the condition), it offered no such requirement for the association component of the condition. We remain unsure, then, whether an accidental or chance meeting with a street-gang member would violate this condition. Clarification must be provided to determine what "association" means. Accordingly, under *Thompson*, this condition must also be vacated.

Purham's sentence requires a limited remand for reconsideration of the above terms of supervised release. *United States v. Sewell*, 780 F.3d 839, 852 (7th Cir.2015); *see also Siegel*, 753 F.3d at 717 ("So the prison sentences ... stand, but the cases must be remanded for reconsid-

---

**3.** The government concedes as much in its brief.

eration of the conditions of supervised release").

### III. Conclusion

We AFFIRM in part and VACATE in part. We AFFIRM the district court's term of imprisonment. It is substantively reasonable, and the district court did not exceed the scope of our remand in imposing it. We VACATE, however, the community-service and gang-association conditions of supervised release discussed above. The sentence is AFFIRMED in every other respect. The case is REMANDED to the district court for limited proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part.